(No. 6550.  October 3, 1938.)

CLAUD WINELAND, Appellant, v. D. G. TAYLOR, Doing
Business Under the Trade Name and Style of TAYLOR
CHEVROLET COMPANY, and STATE INSURANCE
FUND, Respondents.

[83 Pac. (2d) 988.]

402

W. Lloyd Adams and Mary Smith, for Appellant.

Carroll F. Zapp, for Respondents.

GIVENS, J.—Appellant, living at Ashton, was employed as a mechanic in the Rexburg garage of respondent Taylor Chevrolet Company, owned and operated by D. G. Taylor, which operates two garages, one at Ashton and one at Rexburg.

Saturday, August 14, 1937, Taylor and Peterson, his manager of the service department at both garages, decided to send appellant to Ashton to ultimately replace one Jackson as foreman there, that he should go there immediately and report for duty to one Hemming, manager of respondent's garage at that place.

Desiring, however, that appellant should acquaint himself before he left with some new testing machinery that had recently been installed, with which he was unfamiliar, there being one for each garage, they kept him at Rexburg and he worked on these machines all day until about 8 o'clock that evening. Just as he was about to leave for Ashton pursuant to his employer's orders to report there immediately upon his arrival, some emergency work came in and the garage offering 24 hour service, and no one else being then available to do this work, respondent offered to, and did, stay and perform this service, finishing about 11 o'clock when he and his wife immediately left for Ashton without having had their supper. The radiator of appellant's car leaked and the engine heating, he stopped near an amusement pavilion at Riverside about 14 miles north of Rexburg, where, while he went to the river to get water to fill the radiator, his wife went into the amusement hall. As soon as he had filled his radiator he joined her there and listened to a record which was being played, and then continued on their way for about

5 or 6 miles when they were run into by another car, so severely crushing appellant's arm that later it had to be amputated.

Appellant sought compensation from his employer and the State Insurance Fund, insurance carrier, before the Industrial Accident Board which made this pertinent finding:

"That at all times herein mentioned claimant was a married man, living with his wife at a hotel in Ashton, Idaho; that while claimant was employed at the defendant's garage in Rexburg, Idaho, as hereinbefore stated, he went by automobile each morning from Ashton, Idaho, to his place of employment at Rexburg and in the evening returned by automobile from Rexburg to Ashton; that claimant reported for duty at his place of employment in Rexburg at eight o'clock on the morning of August 14, 1937, and worked for about one-half hour at repairing an automobile; that while thus engaged, claimant was advised by his employer that he was being transferred to his employer's garage at Ashton, where he would be employed as a mechanic at a monthly salary of $100.00, the change in salary becoming effective immediately on that day, but claimant was also told that before reporting for duty at Ashton he would receive special instruction in the use of a recently acquired motor testing machine until advised by the manager of the garage at Rexburg that he was to proceed to Ashton for duty there; that claimant continued to receive such special instruction in the use of said motor testing machine throughout the day of August 14 and until about the hour of eight o'clock in the evening of that day, at which time an emergency auto repair job was received in said garage and claimant volunteered to do such emergency job before quitting work for that day; that claimant then proceeded to do said emergency job and while thus engaged he was told by the manager in charge of said Rexburg garage that when he had completed the job on which he was then engaged he should proceed to Ashton and report to the manager in charge of the Taylor Chevrolet Company garage at that place for duty as a mechanic; that at about the hour of eleven o'clock that evening claimant completed the emergency job on which he had been engaged and thereupon

he and his wife started by automobile from Rexburg to Ashton over the Yellowstone Highway which is the main highway between said cities; that the distance between said cities is about twenty-eight miles; that when claimant and his wife had passed through and beyond the City of St. Anthony, a distance of six or seven miles, they noticed that their car radiator was leaking and that the engine was heating and they stopped at a night club resort known as the 'Riverside Inn' where a Saturday night dance was then in progress; that after stopping at said place claimant first filled the radiator of his car with water and then he and his wife went into the night club for a time before proceeding on their way toward Ashton; that after proceeding for a short distance, the automobile in which claimant and his wife were riding was sideswiped and partially wrecked by a collision with another automobile; that in said collision claimant's left arm was severely injured and he received severe shock; that within a short time after such collision occurred, claimant was put into a passing automobile and taken to a hospital in the City of St. Anthony, where a physician was called and it was found to be necessary to amputate claimant's left arm at the elbow, and the arm was so amputated.''

And this conclusion:

''That said accident did not arise out of and in the course of claimant's employment with said defendant but occurred after working hours and while claimant was on his own time.''

██ This conclusion, denying compensation, is apparently on the basis that the board considered the paramount and controlling purpose of appellant's trip to Ashton was to return home and eat his supper and that the orders of his employer that he report to the Ashton Garage and Hemming and work that night if necessary, was secondary and of no effective importance. The only evidence remotely supporting this conclusion is as follows:

''Q. Then you left the job, I believe, and you testified you picked up your wife?

''A. Yes.

''Q. Where did you pick up your wife?

"A. At one of the grocery stores where she did her shopping.

"Q. Which grocery store?

"A. I couldn't say. I wasn't acquainted with any of the stores. It was on Main Street.

"Q. You picked her up, and the groceries?

"A. Yes.

"Q. Did you eat dinner then?

"A. No.

"Q. You were going to eat at home?

"A. Whenever we came in.

"Q. Did you customarily go home to Ashton for dinner in the evening?

"A. Yes."

This court has clearly announced the rule that "if the service of the master was a concurrent cause of the trip, which the servant was taking at the time of the accident, the master would be liable for compensation." (*In re Christie* [*Christie v. Robinson Const. Co.*], *ante*, p. 58, 81 Pac. (2d) 65, 72.)

While there are borderline cases and some deviation in the authorities from this rule, the deviation will be found to be in its application to the particular facts rather than from the rule itself. One such notable case being *In the Matter of Mark's Dependents v. Gray*, 251 N. Y. 90, 167 N. E. 181. It will be observed that later cases recognizing the rule therein stated, which in substance is that stated in *In re Christie* [*Christie v. Robinson Const. Co.*], *supra*, have in circumstances somewhat similar to those in the case at bar, so held that from facts as found by the board herein, the correct legal conclusion should be to allow compensation. (*O'Leary v. North Dakota Workmen's Comp. Bureau*, 62 N. D. 457, 243 N. W. 805; *Employers' Liability Assur. Corp. v. Hoage*, 69 Fed. (2d) 227, 63 App. D. C. 53; *Schwimmer v. Kammerman & Kaminsky*, 262 N. Y. 104, 186 N. E. 409; *Munson v. State Industrial Accident Com.*, 142 Or. 252, 20 Pac. (2d) 229; *Gagnebin v. Industrial Accident Com.*, 140 Cal. App. 80, 34

Pac. (2d) 1052; *Johnson v. Industrial Com.*, 222 Wis. 19, 267 N. W. 286.)

■■ The record is uncontradicted to the effect that appellant was to report to Hemming at the Ashton garage as soon as he arrived and that emergency work had come into the Ashton garage that day; that the only reason appellant did not go to Ashton sooner that day was because he was actively engaged in his employer's business, i. e., learning about the testing machine. If he had gone sooner, that is, either in the morning or when he finished his work with the testing machine at 8 o'clock that evening, this particular accident could not have happened. Conceding the delay when he put the water in the radiator occasioned as to point of time the collision, the evidence shows this was the only road he could travel, his employer knew he had to drive his own automobile and placing of the water in the radiator was a necessary part of the journey, and merely listening to the record in the amusement hall was not so great a deviation from the pursuit of his journey as to bar recovery; this court having said that an employee may do that which a reasonable person may do under like circumstances and still be engaged in his master's business. (*Zeier v. Boise Transfer Co.*, 43 Ida. 549, 254 Pac. 209; *Murdoch v. Humes & Swanstrom*, 51 Ida. 459, 6 Pac. (2d) 472; *In re McKenzie*, 54 Ida. 481, 490, 33 Pac. (2d) 113.)

The finding and the entire record leads only to the conclusion that so far as the trip from Rexburg to Ashton was concerned, that while appellant and his wife lived in Ashton and they might have supper when they got there, the main purpose for the trip at the time when it was made and under the circumstances for its being made was in furtherance of the employer's business.

■ The record discloses that appellant had one minor dependent, 16 years of age at the time of the accident, and, therefore, the exact amount of appellant's compensation is unimportant, since the minimum he was concededly receiving would entitle him to the maximum award as a married man with one dependent.

The cause is reversed and remanded to the Industrial Accident Board with orders to enter an award accordingly.

Costs to appellant.

Holden, C. J., and Morgan, Ailshie and Budge, JJ., concur.