146 P.2d 867

**McKINNEY v. DORLAC et al.**

No. 4797.

Supreme Court of New Mexico.
Feb. 23, 1944.

Rehearing Denied April 3, 1944.

Dailey & Rogers and Jethro S. Vaught, Jr., all of Albuquerque, for appellants.

H. O. Waggoner, of Albuquerque, for appellee.

THREET, Justice.

Appellee, Helen McKinney, filed her suit in the District Court of Bernalillo County, under the Workmen's Compensation Act, to recover compensation for the death of her husband, Arthur McKinney, occurring in an automobile accident near Encino, New Mexico, on August 8, 1941.

The facts, in substance, are as follows:

Prior to August 8, 1941, the deceased, Arthur McKinney, had been employed as a plasterer by appellant H. C. Dorlac off and on for a period of five years. H. C. Dorlac had a sub-contract with the Lembke Construction Company to do a plaster job in Roswell, New Mexico, beginning on August 11, 1941. On the evening of August 7, 1941, it was agreed between the appellant H. C. Dorlac and the deceased that the deceased would go to Roswell on August 8, 1941, and make preparations for starting the plastering work at Roswell, New Mexico, on August 11, 1941, on which job the deceased was to act as foreman for the appellant Dorlac. The deceased worked for the appellant Dorlac in Albuquerque, New Mexico, which was his residence, on August 7, 1941 and on the evening of that day was paid the wages due him and was also paid a day's wages for August 8, 1941 for the reason that if he had remained in Albuquerque he could have continued to work for the appellant Dorlac on that day, and was also to be paid for the day following his arrival in Roswell, New Mexico, if he arrived there in time to do a day's work. On August 8, 1941, the deceased together with appellee, his wife, and Edson Lee Flower, brother of appellee, left Albuquerque on or about noon of that day to drive to Roswell, New Mexico, in a 1934 Ford Coupe automobile owned and being driven by the deceased. They proceeded towards Roswell on the regular traveled route and on arriving at Encino, New Mexico, they stopped and spent an hour or more in a bar and cafe operated by Blas Garcia. At approximately 4 o'clock of that day they left Encino to continue their journey to Roswell, New Mexico. The deceased was driving the automobile. Edson Lee Flower was sitting on the right hand side of the automobile, and the appellee was sitting between her brother and the deceased. They had driven approximately about one and one-half miles east of Encino, when they had an accident in which deceased lost his life. The highway at the point of the accident was straight for a considerable distance. The deceased was driving the automobile at approximately 55 miles per hour when Edson Lee Flower noticed that the wheels on the left side of the automobile were over on the left side of the white line in the center of the highway. Edson Lee Flower called this to the attention of the deceased, whereupon the deceased pulled the automobile to the right side of the highway when the brakes appeared to lock and the automobile left the highway and turned over resulting in the death of the deceased. Appellant Dorlac carried workmen's com-

pensation insurance with appellant Pioneer Mutual Compensation Company. At the close of the testimony for appellee, appellants moved for a dismissal of appellee's claim for compensation on the following grounds: "If the court please, the plaintiff having rested, defendants, and each of them, move the court to dismiss plaintiff's claim for compensation for the reason that plaintiff's testimony and that of witnesses affirmatively show that the death of Arthur McKinney did not result from injuries from the extra hazardous occupation, or pursuant to his employment, as used in the workmen's compensation act, for the reason that it did not occur on or about the premises occupied, used or controlled by the employer in the conduct of his business as a plaster contractor, but occurred·while he was on his way to assume the duties of his employment at Roswell, New Mexico, and that the testimony wholly fails to show that the approximate cause of his injury was due to the negligence of his employer."

The trial court overruled appellants' motion to dismiss, whereupon they demurred to the evidence. The demurrer was based upon the identical grounds set forth in the motion to dismiss. The demurrer was also overruled. Appellants electing to stand upon their motion and demurrer, judgment followed in favor of appellee.

Assignments of error are as follows:

"1. The district court erred in overruling the motion to dismiss interposed at the conclusion of claimants testimony.

"2. The district court erred in overruling the demurrer to the evidence interposed to the conclusion of claimants testimony."

The facts are undisputed. The question here becomes one of law. This case was instituted under the New Mexico Compensation Act, 1941 Comp., Sec. 57-912, Subsec. L, which reads as follows: "The words 'injuries sustained in extra-hazardous occupations or pursuit,' as used in this act (§§ 57-901–57-931) shall include death resulting from injury, and injuries to workmen, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business, but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence."

Appellants' contention is that the injuries sustained by the deceased did not arise out of his employment or in the course of his employment and that the deceased workman came within the latter provision of Subsec. L, supra, which reads: "but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence," and state that, since this provision has been

construed by this court in Cuellar v. American Employers' Ins. Co. of Boston, Mass., 36 N.M. 141, 9 P.2d 685, and Caviness v. Driscoll Const. Co., et al., 39 N.M. 441, 49 P.2d 251, the evidence does not bring appellee within the rule announced in these cases for the reason that the approximate cause of the injuries to the deceased was not due to appellant Dorlac's negligence.

It may be conceded that if the injuries sustained by the deceased occurred under circumstances which will make it fall within the above-quoted section under Subsec. L, supra, then appellants' argument is correct, as the record fails to sustain any claim of injury to the deceased, the approximate cause of which was due to appellant Dorlac's negligence.

Appellee, on the other hand, maintains that the following portion of Subsec. L, supra, applies to the case at bar, to-wit: "* * * * and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business, * * *" and states that Cuellar v. American Employers' Ins. Co. of Boston, Mass., and Caviness v. Driscoll Const. Co. et al., supra, are not applicable to the case at bar. To bring appellee within the rule contended for, the injuries sustained by the deceased must have arisen in the course of his employment; the employment of the deceased must have been continuous; and the trip to Roswell must have been in furtherance of his employer's business.

A liberal construction of the Workmen's Compensation Act has been adopted by this court. The theory of the legislation is compensation, not the denial of it. Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903; Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1; Points v. Wills, 44 N.M. 31, 97 P.2d 374.

The evidence shows that deceased had been working for appellant off and on for a period of five years prior to his death, and that on the day preceding the accident, in which the deceased lost his life, he was working for appellant Dorlac as a plasterer in Albuquerque, New Mexico. On that day the deceased was directed by appellant Dorlac to go to Roswell, New Mexico, to work in the capacity as a foreman for appellant Dorlac, on a plastering job, which appellant was doing as a sub-contractor with the Lembke Construction Company. Our statute does not contain the phrase "and injuries occurring elsewhere in the course of his employment" as found in so many of the statutes from other states, but contains the phrase "and injuries occurring elsewhere while at work." The meaning of the language "while at work" is synonymous with the phrase "in the course of his employment." Placing this construction upon the wording of our statute, we find the rule most widely adopted by the courts to be as follows: "* * * an injury to an employee arises in the course of his * * * employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental [there—

to]." Young v. Department of Labor and Industries, 200 Wash. 138, 93 P.2d 337, 339, 123 A.L.R. 1171.

Applying this rule to the case at bar, was the deceased, at the time of the accident, within the orbit, area, scope or sphere of his employment and engaged in doing something incidental thereto?

"The words 'in the course of [his] employment' relate to the time, place, and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." Hama Hama Logging Co. v. Dept. of Labor, etc., 157 Wash. 96, 288 P. 655, 657. Case of Fournier, 120 Me. 236, 113 A. 270, 272, 23 A.L.R. 1156.

It is undisputed that the deceased was in the employ of the appellant Dorlac at and before the time he was directed to proceed to Roswell, New Mexico, to take charge of a plastering job that appellant Dorlac had under contract. The deceased received his regular wages on the day of the accident, and was to receive pay as a foreman the following day if he arrived at Roswell in time to perform a day's work. There is no contention that appellee deviated from the regular route from Albuquerque, New Mexico, to Roswell, New Mexico.

"It is a general rule, universally recognized, that an accident does not arise out of and in the course of employment, if it is caused by the workman doing something entirely for his own purposes. Schneider's Workmen's Compensation Law, vol. 1, (2d Ed.) p. 742." Inland Gas Corp. v. Frazier, 246 Ky. 432, 55 S.W.2d 26, 27.

There are exceptions to this general rule as where the employee's duties require him to travel from one job to another. We think the case at bar comes within the exception to the general rule, and that the deceased was discharging a duty contemplated by the terms of his employment in going from Albuquerque, New Mexico, to Roswell, New Mexico, and that the injuries sustained by him were in the course of his employment.

No case has been cited from this court as bearing upon this particular question, but there is an abundance of authority from other courts. In the case of Burchfield v. Dept. of Labor and Industries, 165 Wash. 106, 4 P.2d 858, 859, appellant, Burchfield, was employed by the Longview Stevedore, a Washington corporation, engaged in the business of loading and stowing cargoes on and off ships at Longview, Kelso and Vancouver, Washington, and at Rainier, Oregon. When he had finished his work at Longview on the evening of December 22d, he was directed by his employer to proceed with several of his fellow workmen to the dock at Vancouver, Washington, and to be there prior to the arrival of the ship

in order to assist in mooring the ship when she reached the dock. The distance between the dock at Longview where the services of appellant ceased on December 22d, and the dock at Vancouver, where his services were to be resumed at 2 o'clock a. m., in the following morning, was not shown in miles. There was a regular communication between the two cities by bus service. Appellant, and presumably other members of the crew, were allowed, in addition to their regular wages, $1.40 for transportation between Longview and Vancouver. The appellant and his fellow workmen were left free to use any means of transportation that they might desire; the only condition was that they make the trip in time to resume the duties as required by the master. In accordance with his directions to proceed to Vancouver, appellant, driving his own automobile and taking with him several of his fellow employees, left Longview in the evening of December 22d for the purpose of going to Vancouver to be at the dock to receive the vessel at the express direction of his master. A few miles out of Longview, appellant's automobile in proceeding over a plank portion of the highway, which was then covered with frost and ice, skidded in such a manner as to inflict upon appellant injuries for which he claimed compensation. The Washington court in allowing appellant's claim for compensation stated:

"The sole question involved in this case is, Were the injuries suffered by appellant received in the course of his employment? * * * if Burchfield was engaged in, or was furthering, his employer's business at the time of his injuries, he was in the course of his employment. As we have already pointed out, the stevedoring company which employed the appellant was engaged in serving ships at at least three ports in the State of Washington, and one in the State of Oregon, and perhaps at other ports along the lower Columbia river. Its business was such that in the main, and especially as to skilled men, such as hatch tenders, the company had, and could have, but one crew; and the members of that crew were, by the nature of the business, obliged to report at the various places where work was to be performed. The men so reporting at such various places of work were allowed transportation charges to and from their home port, but only received pay for the time actually employed. When transferring from one place to another as directed by his employer, the appellant was performing his duty to that employer, and was then within the scope of his employment. * * *

"Since, as we have already seen, the employer had to have a movable, instead of a stationary, crew. It was as much the duty of the crew to move from port to port as it was to perform the work at the port on arrival; and the crew members, while so moving, were as much in the course of their employment as when actually engaged in loading or unloading the ship and earning pay."

Indian Territory Illuminating Oil Company v. Whitten, 150 Okl. 303, 1 P.2d 756,

and Texas Employers' Ins. Association v. Herron, Tex.Civ.App., 29 S.W.2d 524, would also support appellee's position.

The deceased, in transferring from Albuquerque, New Mexico, to Roswell, New Mexico, at the direction of appellant Dorlac, was performing his duty to his employer and was within the scope of his employment at the time the fatal accident occurred. Gagnebin v. Industrial Accident Comm., 140 Cal.App. 80, 34 P.2d 1052.

In the case of Wineland v. Taylor et al., 59 Idaho 401, 83 P.2d 988, 989, the facts are very similar to the case at bar. The claimant lived at a hotel at Ashton, Idaho. He was employed at the defendant's garage at Rexburg, Idaho, and went by automobile each morning from Ashton to his place of employment at Rexburg and in the evening returned by automobile to his home. He reported for duty at his place of employment at 8 o'clock in the morning of August 14, 1937, and worked at repairing an automobile. While he was thus engaged, he was advised by his employer that he was being transferred to his employer's garage at Ashton where he would be employed as a mechanic at a monthly salary of $100. The change in salary becoming effective immediately on that day. Claimant was also told that before reporting for duty at Ashton he would receive special instructions in the use of the recently acquired motor testing machine, until advised by the manager of the garage at Rexburg that he was to proceed to Ashton for duty there. Claimant continued to receive such special instruction in the use of the motor testing machine throughout the day of August 14th and until about the hour of 8 o'clock in the evening, at which time an emergency auto repair job was received in said garage, and claimant volunteered to do such emergency job before quitting work for that day. He proceeded to do the emergency job and, while thus engaged, he was told by the manager in charge of the Rexburg garage that when he had completed the job, in which he was then engaged, he was to proceed to Ashton and was to report to the manager of the Taylor Chevrolet Garage for duty as a mechanic. After he had completed their emergency job he and his wife started by automobile from Rexburg to Ashton over the Yellowstone Highway, which is the main highway between the two cities. The distance being about 20 miles. When the claimant and his wife had passed through the city of St. Anthony, a distance of six or seven miles, they noticed that their car radiator was leaking and the engine was heating and they stopped at a night club resort, known as the Riverside Inn, where a Saturday night dance was then in progress. Claimant filled the radiator of his automobile with water and then he and his wife went into the night club before proceeding to Ashton. They left the night club and had proceeded for a short distance, when the automobile in which claimant and his wife were riding was sideswiped and partially wrecked by collision with another automobile. Claimant's left arm was severely injured and he received severe shock.

The Industrial Accident Board denied claimant's claim and concluded: "That said accident did not arise out of and in the course of claimant's employment with said defendant but occurred after working hours and while claimant was on his own time."

The court in reversing the order of the Industrial Accident Board said:

"This conclusion, denying compensation, is apparently on the basis that the board considered the paramount and controlling purpose of appellant's trip to Ashton was to return home and eat his supper and that the orders of his employer that he report to the Ashton Garage and Hemming and work that night if necessary, was secondary and of no effective importance. * * * This court has clearly announced the rule that 'if the service of the master was a concurrent cause of the trip, which the servant was taking at the time of the accident, the master would be liable for compensation.' Christie v. Robinson Const. Co. [59 Idaho 58], 81 P.2d 65, 72.

"While there are borderline cases and some deviation in the authorities from this rule, the deviation will be found to be in its application to the particular facts rather than from the rule itself. One such notable case being Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181. It will be observed that later cases recognizing the rule therein stated, which in substance is that stated in Christie v. Robinson Const. Co., supra, have in circumstances somewhat similar to those in the case at bar, so held that from

facts as found by the board herein, the correct legal conclusion should be to allow compensation. O'Leary v. North Dakota Workmen's Comp. Bureau, 62 N.D. 457, 243 N.W. 805; Employers' Liability Assurance Corp. v. Hoage, 63 App.D.C. 53, 69 F.2d 227; Schwimmer v. Kammerman & Kaminsky, 262 N.Y. 104, 186 N.E. 409; Munson v. State Industrial Accident Comm., 142 Or. 252, 20 P.2d 229; Gagnebin v. Industrial Accident Comm., 140 Cal. App. 80, 34 P.2d 1052; Johnson v. Industrial Comm., 222 Wis. 19, 267 N.W. 286."

█ Conceding the delay when the deceased stopped at Encino, the evidence shows that he was traveling the most direct route from Albuquerque, New Mexico, to Roswell, New Mexico, and stopping at Encino was not so great a deviation from the pursuit of his journey to bar recovery. The deceased was justified in doing that which a reasonable person might do under like circumstances and still be engaged in his master's business. Wineland v. Taylor et al., supra; Zeier v. Boise Transf. Co., 43 Idaho 549, 254 P. 209; Murdoch v. Humes & Swanstrom, 51 Idaho 459, 6 P.2d 472; In re MacKenzie, 54 Idaho 481, 33 P.2d 113.

The evidence and the entire record, in the case at bar, lead only to the conclusion that there was no break in deceased's employment and that the main purpose in making the trip from Albuquerque, New Mexico, to Roswell, New Mexico, was in the furtherance of the business of the appellant Dorlac.

For the reasons herein stated, the judgment of the trial court will be affirmed. The appellee is allowed $250 attorney's fees for the prosecution of her case in this court.

It is so ordered.

MABRY and BRICE, JJ., concur.

SADLER, Chief Justice (dissenting).

At the time of his injury and death the decedent, his wife and his wife's brother were traveling together in the decedent's automobile from Albuquerque to Roswell where decedent and the brother-in-law were to assume the duties of their employment. The fortuitous circumstance that the employer in the case of decedent, and to compensate for the day's wage the latter could have earned by remaining in Albuquerque at work that day, voluntarily and without request or insistence by decedent agreed to and did pay him for the day to be consumed in travel from Albuquerque to Roswell, did not make "travel" an incident of his employment, nor remove him from the exception denying recovery for injuries, save through employer's negligence, "occurring while on his way to assume the duties of his employment". 1941 Comp. § 57-912(*l*).

The only difference between the brother-in-law's status and that of decedent is payment of this one day's wage. Admittedly, the former, who suffered injury in the same accident, falls squarely within the exception. This was so obvious, as counsel explain, that claim was not even made on account of his injury. The decedent was no less "on his way to assume the duties of his employment" unless the chance payment of one day's wage to cover travel time alters the situation.

In my opinion, a circumstance so fortuitous should not affect a determination of the question whether an employee's injury substantially arises "out of and in the course of his employment," (1941 Comp., § 57-906(c), as defined in § 57-912(*l*), particularly, since said last-cited section expressly declares "injuries sustained in extra-hazardous occupations * * * shall not include injuries to any workman occurring while on the way to assume the duties of his employment". It is worthy of note that the Idaho statute construed in Wineland v. Taylor, 59 Idaho 401, 83 P.2d 988, a case relied upon in the prevailing opinion, does not contain the exception just quoted from our statute.

If the record before us disclosed that decedent's employment made travel an incident of his employment, a different situation would be presented. We do not have that kind of case and there is nothing in the evidence to remove decedent from the effect of the exception and place him within the so-called "travel cases" in which recovery is generally allowed.

I dissent.

BICKLEY, J., concurs.