170 P.2d 404

**SMITH v. UNIVERSITY OF IDAHO et al.**

No. 7264.

Supreme Court of Idaho.

June 14, 1946.

Walter M. Oros, of Boise, for appellants.

Murray Estes, of Moscow, for respondent.

BUDGE, Justice.

This proceeding was commenced before the Industrial Accident Board by Richard O. Smith, as residuary legatee under the last will and testament of Ida M. Smith, deceased, against the University of Idaho, employer, and State Insurance Fund, surety, to recover medical and burial expenses incurred by the deceased's estate as the result of an accident and injury culminating in her death. It is alleged in claimant's petition that the death of Ida M. Smith was caused by accident arising out of and in the course of her employment with the University of Idaho. Both the employer and the surety denied said allegation. Briefly stated, the facts are substantially as follows:

During the afternoon of December 8, 1943, Ida M. Smith, who was employed by the University as hostess or housemother at Ridenbaugh Hall, a girl's dormitory lo-

cated on the campus, accidentally slipped and fell on a sidewalk in the city of Moscow and, as a result of the fall, fractured the neck of the left femur. The accident occurred near the Gritman Hospital; she was carried into the hospital where she received medical attention by Dr. C. J. Klaaren. On the 10th of December, Dr. William Grieve and Dr. Klaaren reduced the fracture and pinned the femur. December 12th Mrs. Smith died. Dr. Klaaren testified that, in his opinion, the cause of her death was a cerebral hemorrhage.

From an award of the board in favor of claimant this appeal is prosecuted.

Appellants specify and rely upon five assignments of error. There is however but one question necessary to be determined, namely, "Did the accident and injury resulting in the death of Ida M. Smith arise out of and in the course of her employment with the University of Idaho?

The board found the following facts, among others:

"III. That among the dormitories and other facilities for students maintained by said University at Moscow, is one known as Ridenbaugh Hall; that for some time prior to the 8th day of December, 1943, and continually until her death, Ida M. Smith, deceased, was a 'hostess' in said Ridenbaugh Hall under a contract of employment with the said University; that as such hostess, among other duties, she was in charge of and had the direction of the social program of the girls housed in said hall,

charged with the duty of promoting the girls' social, health, and recreational activities, and to see that the rules and regulations promulgated by the office of the Dean of Women and Director of Dormitories were carried out; that the expenses of operating the hall were borne by the University, but that the girls bought, processed and served their own food on a cooperative basis; that the said deceased was furnished a suite of rooms in which there is a kitchenette, in which suite she was required occasionally to entertain the Dean of Women and girls of said hall; that she was furnished by the University all of her meals which she ate in the hall with the girls except her breakfast which she ate in her room, and the food for such breakfast she purchased and paid for herself; that she had no specified hours but was on duty twenty-four hours each day.

"IV. That for some days prior to the 8th day of December, 1943, the girls in the Ridenbaugh Hall, under the direction of a committee appointed for that purpose, were preparing for the usual Christmas celebration and a Christmas tree in said hall.

"V. That on the 8th day of December, 1943, the said deceased left the said Ridenbaugh Hall and went to town and purchased some articles which, at the time of the accident hereinafter described, she had with her, and among which articles she so purchased and had with her were a jar of coffee and some Christmas tree ornaments; that after purchasing said articles, she

started to return to Ridenbaugh Hall and, on the way, fell on the public street of Moscow and fractured the neck of her left femur; that she was picked up after her fall, taken to a hospital where she received surgical care and nursing.

\* \* \* \* \* \*

"X. That the State Insurance Fund has paid the fees charged by Dr. Grieve, the hospital, and the nurses who attended the said Ida M. Smith, but has not paid the fee of Dr. Klaaren and has not [paid] the burial expenses.

"XI. That the injury sustained by the said Ida M. Smith on the 8th day of December, 1943, was a personal injury by accident arising out of and in the course of her employment with the defendant, University of Idaho, and that her death on the 12th day of December was the result of said injury."

It may be conceded at the outset that the facts present a borderline case.

However "all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction. \* \* \*

"One of the purposes of the Workmen's Compensation Acts is to broaden the right of employees to compensation for injuries due to their employment. \* \* \* We quote from the decision of the Montana Court in Writa v. North Butte Mining Co., 64 Mont. 279, 210 P. 332, 335, 30 A.L.R. 964: 'The word "employment," as used in the Workmen's Compensation Act, does not have reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do. \* \* \* To say that plaintiff "ceased" working for the defendant is not equivalent to saying that he severed the relation of employer and employee.'

"Since the courts have recognized the broad humane purposes of the act, they have readily perceived that the mere fact that the injury befell the claimant, at a moment when he was not performing manual labor for his employer, does not necessarily prove that the accident did not arise out of or in the course of the employment. The words just mentioned which are a part of most of the acts are never qualified by the limitation that the injury must have been inflicted during regular working hours." Lamm v. Silver Falls Timber Co., 133 Or. 468, 277 P. 91, 286 P. 527, 530, 291 P. 375. See, also, Hamlin v. University of Idaho, 61 Idaho 570, 104 P.2d 625; Olson v. Union Pac. R. Co., 62 Idaho 423, 112 P.2d 1005; Dawson v. Joe Chester A. L. Co., 62 Idaho 508, 112 P.2d 494; Long v. Brown, 64 Idaho 39, 128 P.2d 754; Dauphine v. Industrial Acc. Comm., 57 Cal.App.2d 949, 135 P.2d 644.

Mrs. Smith, at the time of the accident and injury and up to the time of her death, was in the employment of the University of Idaho at a stipulated amount per month, and was so employed at the time she purchased the coffee and Christmas tree ornaments.

The question therefore arises: Under the facts of this case did Mrs. Smith, employed 24 hours each day, interrupt her service so as to remove her from the protection of the provisions of the Workmen's Compensation Act, Code 1932, § 43-901 et seq?

Under the terms of her contract of employment with the university, Mrs. Smith was furnished all her meals at the expense of the university *except her breakfast*. She purchased food for her breakfast with her own funds and ate in her apartment in the hall; that it was necessary for her to purchase breakfast groceries and, in order to do so, it was incumbent upon her to go downtown. Conceding the purchase of the coffee was for her personal use, she had made the purchase, was on her way back to the hall when she accidentally fell on the public street, sustaining the injury from which she later died. Clearly she was doing what a person under like facts and circumstances, engaged in like employment may reasonably do, and would be expected to do, the doing of which would be incidental to and within the scope of her employment.

The rule would seem to be well established that an employee does not step aside from his employment and is without the protection of the statute when doing a reasonable and necessary act at the time and place to the end that the business of his employer may be properly conducted. Denials of awards for any period when the employee is actively engaged in working for his employer, or while doing something reasonably incident to his employment, should rarely be based on the proposition that it was not in the course of the employment. These words are construed broadly, and should be so construed, to carry out the intent and purposes of the Workmen's Compensation Act. Nor is the service interrupted when for a brief interval the worker performs a personal errand not forbidden.

The rule above stated is supported in the case of Whitham v. Gellis, 91 N.H. 226, 16 A.2d 703, 704, wherein the following language is used: "While the decedent's errand was not a part of his work, the finding that it was a natural incident of it is construed to mean that it was not a departure from it. Taking into account the nature of his errand which called for no time or distance amounting to an absence in breach of the terms of his employment, the conclusion is that the accident arose out of as well as in the course of the employment. It was his duty to be on hand, and it was while on duty and in connection with the duty that the acci-

dent occurred. While engaged in employment an employee's conduct in matters of a personal nature reasonably to be undertaken and not expressly forbidden is as much in the course of the employment as when he is actually performing the work of the employment, and accidents sustained in such conduct arise as much out of the employment as when he is actually doing the work for which he is hired. The service is not interrupted. One, though not the only, cause of the decedent's accident was his employment within the course of which he was acting at the time."

The principle above stated was applied to the facts in Whitham v. Gellis, supra, which are as follows: "The plaintiff's intestate had charge of a filling station of the defendant located at the side of the highway between West Lebanon and Hanover. He lived at the premises and was in service during daytime. While alone at the station and on duty he crossed the highway to make a purchase for his personal use at a store opposite the station. On his return, while in the highway and nearly reaching the grounds of the station he was struck by an automobile and killed. His personal errand was not forbidden by the defendant and was one reasonably expected to be permitted. It was found that the errand was 'a natural incident' of the decedent's employment."

Compensation is allowable when the injury arises out of the nature of the employment, conditions, obligations or incidents of the employment. In other words, an injury arises out of the employment if it arises out of the nature, condition, obligation or incidents of the employment, and is compensable. Caswell's Case, 305 Mass. 500, 26 N.E.2d 328. In most jurisdictions incidents of employment are as well protected under the compensation law as injuries on the main job.

"* * * it is enough if there be a causal connection between the injury and the business * * * a connection substantially contributory though it need not be the sole or proximate cause. * * * No exact formula can be laid down which will automatically solve every case." Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 154, 68 L. Ed. 366, 30 A.L.R. 532.

In Larke v. John Hancock Mut. Life Ins. Co., 90 Conn. 303, 97 A. 320, 321, 322, L.R.A.1916E, 584, 586, it is said: "The duty ancillary or incident to the employment has in some instances been held to include the doing of something primarily for the benefit of the employé, but ultimately it is assumed for the master * * * or the doing of something by the employé which he reasonably believes for the master's interest."

The rule would seem to be well established that in order to be entitled to compensation it is not necessary that at the time of the accident (1) the employee was doing something for the direct benefit

of the employer; (2) that he was at his place of duty, and (3) that he was injured during working hours. Lamm v. Silver Falls Timber Co., supra.

In England v. Fairview School District, 58 Idaho 633, 77 P.2d 655, quoting from the case of Mann v. Board of Education of the City of Detroit, 266 Mich. 271, 253 N.W. 294, 295, it was held: " 'Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable. *If the act is one for the benefit of the employer or for the mutual benefit of both, an injury arising out of it will usually be compensable;* * * *.' " (Emphasis supplied.)

In Superior Smokeless Coal & Mining Co. v. Hise, 89 Okl. 70, 213 P. 303, it was held that an injury by accident was compensable if: "It [the injury] arises 'out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be said to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment." See, also, Weston-Dodson Co. v. Carl, 156 Md. 535, 144 A. 708.

Whether an injury arose out of and in the course of employment under the Workmen's Compensation Act is a question of fact to be determined by the Industrial Accident Board under the facts and circumstances of each particular case.

When Mrs. Smith purchased the coffee and Christmas tree ornaments she did so for the mutual benefit of herself and her employer. She was at liberty and expected to use her own devices and discretion, in fact, at liberty to use any method advisable by her for the purpose of creating a congenial and homelike atmosphere among the group of girls living at the hall; to win their respect and retain their confidence; to adjust difficulties that might arise among them, and to supervise their conduct and activities, as well as their social affairs. Upon such occasions she served refreshments, all of which was incidental or ancillary to her employment and beneficial to her employer. Her superiors recognized the mutual benefit to Mrs. Smith and the University in carrying out the policy adopted by her. Mann v. Board of Education of the City of Detroit, supra.

Robert F. Greene, director of dormitories at the university, testified, in part, as follows:

"A. Well, the housemothers use various methods of getting acquainted with the

various girls in their group so one of the best ways is to invite them in to their own living room. * * *

"Q. * * * I would like you to state whether or not their every move was controlled, or whether or not they were more or less on their own in conducting the program of social functions and so forth in connection with their particular hall? A. Well, we do not specify and detail the duties of the housemothers because many people are different and have various ways and various approaches with the girls * * * we allow them to function * * * without marking down the details.

"Q. * * * if I understand you correctly, they may use any methods they desire to develop that condition as long as it doesn't interfere with some University rule? A. That is right.

"Q. Do you know whether or not it is a habit of some of the hostesses and housemothers to invite the various girls to their living quarters and entertain them socially? A. Yes it is the general custom. * * *

"Q. And are any hours specified for the hostesses or housemothers of the halls? A. No.

"Q. During what part of the day does the University consider them on duty, * * *. A. Well, the program varies throughout the week. Weekends, they have more duties to attend to. In the evenings and on week days they function at mealtime,—in the afternoons and evenings, not so much in the morning.

"Q. And as far as the University is concerned, they might be on duty at any time during the day, or the twenty-four hours in the day, is that right? A. That is correct."

Katherine Dochios, a student residing at, and bookkeeper for, Ridenbaugh Hall, testified as follows:

"Q. Is it customary for the girls to drop in there to see the housemother, and have her to invite them there? A. She doesn't invite the girls there unless it is for a business matter or in a case of homesickness, something like that.

"Q. When they are homesick, it is customary for her to call them in there to do what she can to make their life happy? A. It is up to her discretion.

"Q. It is entirely within her discretion what she did, if she would feel it would help in those relations to serve them refreshments while they were there, that is entirely within her discretion to, isn't it? A. Yes.

"Q. As a matter of fact, the housemothers often do that with the girls, don't they? A. * * * I was asked to report once, and she served refreshments. * * *

"Q. And it is customary generally for her to do that when they are talking over different matters of the hall, and call in different officials of the hall and serve refreshments at that time? A. Yes."

Helen Newman, a student, and president of Ridenbaugh Hall, testified, as follows:

"Q. Now, about the 8th of December, I understand you were preparing, the group at the hall was preparing for a Christmas party? A. Yes.

"Q. Which it was contemplated to hold the next week? A. Yes.

"Q. And so was Mrs. Smith, was she not? A. Yes."

In Scrivner v. Franklin School District No. 2, 50 Idaho 77, 80, 293 P. 666, Justice Givens quotes from Kyle v. Greene High School, 208 Iowa 1037, 226 N.W. 71, at page 72, where it was held: "* * * where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty *incidental to the nature of his employment* in the interest of, or under direction of, his employer. In such cases, an injury arising enroute from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment." (Emphasis supplied.)

Under the particular facts and circumstances of this case, Mrs. Smith was discharging a duty incident to the nature of her employment and in the interest and for the benefit of her employer, therefore, the injury sustained by her is compensable.

"The rule is too well established in this jurisdiction to require the citation of authorities to support the proposition that findings of fact by Industrial Accident Board, *when supported by any competent evidence,* are conclusive on appeal to this court." Cain v. C. C. Anderson Co., 64 Idaho 389, 133 P.2d 723, 726. (Emphasis supplied.)

"The determination of questions of fact is for the board, and a finding supported by either positive evidence or logically inferred from circumstances will not be disturbed." Butler v. Anaconda Copper Min. Co., 46 Idaho 326, 268 P. 6, and cases therein cited.

"All reasonable inferences drawn by the triers of the facts from the evidence will be sustained on review." Phelps Dodge Corporation v. DeWitt, Ariz., 162 P.2d 605, 609.

Under the rule uniformly and consistently followed in this court on appeals in industrial accident cases, we are limited to a review of questions of law only. Likewise, it must be conceded there is not an absence of any competent evidence to sustain the board's findings and award, and where there is any substantial evidence to support the findings and award, the same will not be disturbed on appeal. Knight v. Younkin, 61 Idaho 612, 621, 105 P.2d 456.

Appellants contend that certain evidence was inadmissible as hearsay. Conceding such to be a fact, the receipt thereof would not justify a reversal where

there is sufficient competent evidence to sustain the finding. Butler v. Anaconda Copper Min. Co., supra; Wilson v. Standard Oil Co., 47 Idaho 208, 273 P. 758.

Respondent in his brief states that he desired to point out that the present appeal is unwarranted, both from the standpoint of certainty of liability of the employer and the surety, also from the standpoint of the amount of money involved and, for the foregoing reasons, attorney fees should be assessed against appellants.

Respondent cites no cases and made no oral argument in support of his contention, but merely refers to the statute, Chap. 96, p. 146, 1945 Sess.Laws. We know of no reason, and none has been presented, that would justify the imposition of attorney fees.

The order of the board is affirmed. Costs awarded to respondent.

AILSHIE, C. J., and HOLDEN, J., concur.

GIVENS, J., dissents.