565 P.2d 1367

**Roger RIDGWAY, Claimant-Appellant,**

v.

**COMBINED INSURANCE COMPANIES OF AMERICA, Defendant-Respondent.**

**No. 12160.**

Supreme Court of Idaho.

June 27, 1977.

Glenn A. Coughlan of Coughlan & Coughlan, Boise, for claimant-appellant.

Robert J. Koontz of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendant-respondent.

BAKES, Justice.

The claimant appellant Roger Ridgway was injured while he was in Salt Lake City attending a two week training session operated by the defendant respondent Combined Insurance Companies of America. He applied for workmen's compensation benefits, but the Industrial Commission denied his claim on the ground that his injury had not arisen out of or during the course of employment with Combined. Because the conclusion of law upon which this order was based was in error and because the decision of the commission did not contain independent grounds for denying the claim, we reverse and remand for further proceedings.

In October of 1974 Ridgway answered a newspaper advertisement in which Combined sought trainees to become insurance salesmen. Ridgway signed a trainee agreement with Robert Ward, Combined's sales manager for an eight-county region in southwestern Idaho. Under that agreement Ridgway was to attend a two week training seminar which Combined operated in Salt Lake City. Ward and Combined provided for Ridgway's transportation to Salt Lake City, motel accommodations, travel between the motel and the training sessions, and a $6.00 per diem for meals.

The training program began on Monday, November 4, 1974. Classroom sessions were scheduled for every day during the following two weeks except Sunday, November 10. On that Sunday, Ridgway and three other trainees were at the motel studying in preparation for the second week of the training session. Shortly before noon, Ridgway and Ronald Sparks, another trainee, left the motel to purchase hamburgers for the group. They traveled in Sparks' car. While en route to a restaurant Sparks' car was struck by a train and Ridgway was injured. It is his claim that these injuries were compensable under the Workmen's Compensation Law.

Combined contested the workmen's compensation claim, arguing among other things, that Ridgway was an independent contractor and not Combined's employee. The Industrial Commission did not reach this issue. It concluded that even if Ridgway were Combined's employee, nevertheless,

"the Commission finds that the claimant was performing no service for the defendant at the time of the accident but was on a purely personal errand. *There was no special or peculiar risk to the claimant at that time caused by his alleged employment.* The only possible connection between the accident and the alleged employment was the fact that but for his relationship with the defendant, the claimant would not have been in Salt Lake City. The Commission concludes that this extremely tenuous connection does not establish sufficient causal relationship between employment and the accident on which to base a conclusion that the accident arose out of and in the course of employment with the defendant." Sec. Tr., p. 53. (Emphasis added).

Because, as we shall explain below, the Commission has erroneously applied the special or peculiar risk doctrine to this claim, the matter is remanded to the Industrial Commission for further proceedings.

■ This Court recently considered the peculiar risk doctrine in the case of *Clark v. Daniel Morine Const. Co.,* 98 Idaho 114, 559 P.2d 293 (1977). As we noted in that case, normally an employee traveling to and from work is not within the course of his employment and is not covered by workmen's compensation. However, there is a recognized exception to this rule where travel to and from work involves a "special exposure to a hazard or risk peculiarly associated with the employment" which is the cause of the injury. In such cases, the injury is within the scope of coverage of the workmen's compensation law. 98 Idaho at 115, 559 P.2d 293. As can be seen from *Clark* and the cases cited in that opinion, the peculiar or special risk doctrine only deals with an employee going to and from his work situs, usually the employer's place of business.

■ The appropriate rule to be applied to determine the scope of workmen's compen-

**412**

sation coverage for employees whose work entails travel away from the employer's premises at which the employee normally works is set forth in 1 Larsen, Workmen's Compensation Law, § 25.00, p. 443:

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

When an employee's work requires him to travel away from the employer's place of business or his normal place of work, the employee is covered by workmen's compensation while he attends to matters such as eating or securing lodging. It is necessary for traveling employees to attend to these personal needs in order to carry out the employer's work, often at a location unfamiliar to the employee. Thus, keeping in mind the liberal construction that is to be given to the workmen's compensation laws, *Colson v. Steele*, 73 Idaho 348, 354, 252 P.2d 1049 (1953), the risk incident in going to a restaurant or seeking lodging should normally be covered by the Workmen's Compensation Law.

■ This is not to say that the traveling employee is entitled to portal to portal coverage while away from home. The Commission could find, for example, that an employee who is injured while engaged in a non-business related activity such as skiing or who drowns while scuba diving during a break in a business trip had distinctly departed on a personal errand unrelated to employment. *Compare Wiseman v. Industrial Accident Commission*, 46 Cal.2d 570, 297 P.2d 649 (1956), *with Silver Engineering Works, Inc. v. Simmons*, 180 Colo. 309, 505 P.2d 966 (1973). However, because it is necessary for any traveling employee to maintain himself while traveling, an employee should ordinarily be covered while traveling to and from restaurants, unless the particular trip represents an unreasonable departure in order to pursue some purely personal activity not connected with his employment or necessary to maintain himself while traveling. *Cf. Wineland v. Taylor*, 59 Idaho 401, 83 P.2d 988 (1938). Accordingly, the matter is remanded to the Industrial Commission to determine (1) whether Ridgway was an employee of Ward or Combined or was an independent contractor, and (2) if Ridgway was an employee of Combined, whether his injury arose out of or in the course of his employment under the rules we have set forth herein.

■ Finally, we must consider one evidentiary matter raised by the appellant. Ridgway argues that the Industrial Commission erred by considering defendant's exhibit 13, a standard contract prepared by Combined. This contract, which Ridgway had signed before his accident, but which Combined had not then signed and has never since signed, was a standard contract between Combined and its salesmen who had completed the training session. While this standard printed contract was certainly not determinative of Ridgway's status as an employee or independent contractor at the time of his injury, it was not wholly irrelevant to the determination of whether Ridgway was an independent contractor or an employee at the time of his injury and its admission into evidence, whether or not the Industrial Commission found it probative on that question, was not error.

Reversed and remanded. Costs to appellant.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, C. J., concurs in result.

BISTLINE, Justice, concurring.

I concur in the result reached by the majority insofar as it rejects the Commission's use of the "peculiar risk" doctrine in this context and adopts the "traveling employee" rule as the law in Idaho governing cases of this sort. I feel obliged, however, to note my continuing disagreement with the Court's understanding of the "peculiar risk" doctrine as stated in *Clark v. Daniel Morine Constr. Co., supra*, and reiterated here. I also wish to provide a framework for our adoption of the "traveling employee" doctrine lest it appear that we are

merely following the majority rule rather than carrying out our judicial task of determining whether or not the injury arose out of and in the course of a claimant's employment.

The Commission would here preclude recovery by claimant Ridgway because

"There was no special or peculiar risk to the claimant at that time caused by his alleged employment."

To its credit, the majority recognizes that the "peculiar risk" doctrine's sole function is to provide an exception to the harsh "going and coming rule" which denies compensation in all off-premises accidents sustained while going to or returning from work. Neither the rule nor its exception has any application to an employee who is traveling while away from his home or his normal place of work at the behest of his employer.

There is nothing to be gained by repeating what I stated in my dissent in *Clark*. There I traced the evolution of Idaho's doctrine of "peculiar risk." I demonstrated how the test of *peculiar and abnormal exposure to a common peril* of *Jaynes v. Potlatch Forests, Inc.*, 75 Idaho 297, 271 P.2d 1016 (1954), had given way, in recent years, to the test of *exposure to peculiar, abnormal and wholly uncommon peril* and that, in doing so, the Court had replaced the statutory guidelines with a mechanical approach which recognizes but one small sub-set of compensable accidents. No other jurisdiction in the United States appears to have adopted the "peculiar risk" doctrine as it is presently understood by the majority of this Court. Nor can the doctrine find any support in Idaho case law.

What has become even clearer to me now, is that the doctrine of "peculiar risk," as presently applied by the Commission at the direction of this Court will almost always preclude recovery by a claimant. This consequence was clearly understood by an earlier Court which unanimously rejected the principle the present Court appears to be forcing upon the Commission:

"Appellants' main contention is that the injury for which respondent received an award was not an accident arising out of and in the course of his employment, for the reason that the risk was common to the public. . . .

"To carry such argument to its logical conclusion would mean that practically any accident could be said to be not compensable for the reason that the hazard was no different than that confronting others in the locality. This court has not subscribed to such a doctrine." *Stilwell v. Aberdeen-Springfield C. Co.*, 61 Idaho 357, 360–361, 102 P.2d 296, 298 (1940) (citing *Zeier v. Boise Transfer Co.*, 43 Idaho 549, 254 P. 209 (1927)).

The Court in *Stilwell* went on to adopt as its own the language in *Nikkiczuck v. McArthur*, 9 Alberta L.R. 503, 28 D.L.R. 299:

" 'Simply because you can discover or describe a class of workmen who are generally exposed to such a risk, and find the applicant to be one of that class, seems to me to be no valid reason for refusing him compensation, or for saying that his injury did not arise out of his employment. . . . Upon that principle no man could recover if you could show that a group of other people were exposed in the course of their employment to similar risks. The man would have to be a rara avis indeed, on such a doctrine, before he could succeed.' " *Stilwell v. Aberdeen-Springfield C. Co.*, supra, 61 Idaho at 361–362, 102 P.2d at 298.

I would therefore urge the Court to rethink its present understanding of the "peculiar risk" doctrine and return to the statement of that doctrine which was held by our predecessors in the *Zeier, Stilwell* and *Jaynes* cases.

A word should also be said to assuage any fears that the traveling employee rule works violence to the workmen's compensation statute. The basic inquiry, all are agreed, is the statutory one of determining whether claimant's injury arose out of and in the course of his employment. The question is one of causal connection. On the one hand, it is clear that more than "but for" causality must be shown to link the employment and the accident. "But for" my employment, I would not be driving in the morning rush hour traffic, or dining at the local sandwich counter for lunch, or even heading out to the countryside for vacation

at a particular time of year. Still, if I am hurt in a commuting accident, or poisoned in the local eatery, or injured on a fishing trip, I cannot expect to collect from the State's workmen's compensation fund. The causal connection between the employment and the accident must be a probable one, not just a possible or conceivable one. *Comish v. Simplot Fertilizer Company*, 86 Idaho 79, 383 P.2d 333 (1963); *In re Brown's Death*, 84 Idaho 432, 373 P.2d 332 (1962).

On the other hand, the causal connection that a claimant must establish in a workmen's compensation situation is less than that which a plaintiff must establish in a tort action:

> " . . . It is enough if there be a causal connection between the injury and the business . . . a connection substantially contributory though it need not be the sole or proximate cause." *Cudahy Packing Co. of Nebraska v. Parramore*, 263 U.S. 418, 44 S.Ct. 153, 154, 68 L.Ed. 366 (1923).

Since one need not prove that one's employment is "the sole or proximate cause" of one's accident, it follows that the most obvious and most mechanical criteria can be rejected:

> "The rule would seem to be well established that in order to be entitled to compensation it is *not* necessary that at the time of the accident (1) the employee was doing something for the direct benefit of the employer; (2) that he was at his place of duty, and (3) that he was injured during working hours." *Smith v. University of Idaho*, 67 Idaho 22, 28–29, 170 P.2d 404, 408 (1946). (Emphasis added.)

What, then, is the "causal connection" which governs in workmen's compensation cases if it is less than the proximate causality of tort law, yet more than the merely possible causality of any "but for" relationship one might conceivably set up? No precise formula is available. Perhaps the best that can be said is that an injury

> " . . . arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause . . . " *Eriksen v. Nez Perce County*, 72 Idaho 1, 6, 235 P.2d 736, 738 (1951), quoting from *Larsen v. State Industrial Accident Commission*, 135 Or. 137, 295 P. 195, 196 (1931).

The test is framed in common sense language and it must be applied on a case by case basis in a manner in keeping with the liberal intent of workmen's compensation legislation. There will always be room for reasonable minds to disagree as to its application in a given case. In general, however,

> "Compensation is allowable when the injury arises out of the nature of the employment, conditions, obligations or incidents of the employment. . . . In most jurisdictions incidents of employment are as well protected under the compensation law as injuries on the main job." *Smith v. University of Idaho*, supra, 67 Idaho at 28, 170 P.2d at 408.

Using this as an analytical framework for inquiry, we turn to the case of the traveling employee. Try as we may to consider each case in all its uniqueness, the fact remains that cases eventually form patterns, most especially in those areas of law which generate the greatest number of cases. As courts apply the statutory standard ("arising out of and in the course of [any] employment") to different fact patterns, intermediate standards evolve. As I pointed out with regard to the "going and coming rule" in the *Clark* case, these intermediate standards are dangerous. They are too easy to apply and they tend to usurp the rightful place of the ultimate statutory inquiry. As such, they must constantly be re-examined to assure their continuing validity.

That caveat having been voiced, we turn to an evaluation of the "traveling employee" rule. The rule works a shift in certain burdens of proof. The employee retains the

burden of showing that he is an employee, that the accident occurred while traveling at the behest of his employer, and that he was engaged in reasonable activities at the time of the accident. Once these elements have been proved, the presumption is that any resulting injury is compensable. And that is as it should be. In the case of workers at a fixed site, identically the same type of presumption is invoked. The accident is presumed to arise out of and in the course of their employment whenever they are injured at the work site, during business hours, regardless of their negligence or the remoteness of the accident from the task assigned.

The traveling employee rule is designed to provide much the same protection for those with no fixed hours or site of employment. This category includes traveling salesmen, workers temporarily stationed at distant work sites, workers attending school, conferences or training programs. The rule, as the majority notes, is well stated by Larson as follows:

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." 1 Larson's Workmen's Compensation Law, § 25.00, at 5–172 (1972).

Clearly, this is not an all inclusive continuous employment rule. Rather, it poses the statutory inquiry appropriate for a court faced with cases of this sort: When does a departure from one's employment become so "personal" as to break the "causal connection" therewith such that any resulting accident can no longer be said to "arise out of and in the course of" one's employment? As Larson makes clear in the above quote, it is the unanimous opinion of American courts that the necessity of eating in restaurants away from home is *not* considered to be such a "personal" deviation.

Many courts have struggled to state the rationale for holding compensable those activities which are incidental to a traveling employee's employment and to articulate the test to be employed in drawing a line between such activities and those "purely personal" activities which are not compensable.

In the case of *Wexler v. Industrial Commission*, 52 Ill.2d 506, 288 N.E.2d 420 (1972), the Supreme Court of Illinois granted compensation to the traveling sales representative of a Chicago distributor of musical materials who was killed at about 6:30 p. m. on Memorial Day, 1967, when a runaway truck hit his car. The company argued that the employee who was dressed in a short-sleeve shirt and who was transporting golf clubs and fishing gear was surely not on a business errand on a Memorial Day evening. The court replied:

"But even if it were to be assumed that the decedent was returning from an activity such as golfing, and not from his appointment, we judge that under the circumstances that conduct would not have been unreasonable. It was Memorial Day, a legal holiday in Nebraska, as in this State. The decedent was away from home in the course of an extended sales trip in behalf of his employer. It would be obviously unreasonable and contrary to the intendment of the Workmen's Compensation Act and its purposes to say that a traveling employee has the protection of the Act only when in the physical act of performing selling or other duties and only in the course of a normal business day." 288 N.E.2d at 421–422.

Wisconsin has adopted much the same rule by statutory enactment:

"Every employee whose employment requires him to travel should be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment." Sec. 102.03(1)(f) of Wisconsin Statutes.

In short, the test for determining whether a traveling employee's activity is incidental to his employment or a purely personal deviation is its *reasonableness and foreseeability*. There is no requirement that the employee be in the physical act of performing business duties or that the activity be within the circumscribed hours of the normal business day. *See also, Wright v. Industrial Commission*, 62 Ill.2d 65, 338 N.E.2d 379 (1975); *City of Phillips v. Department of Indus. Labor & H. Rel.*, 56 Wis.2d 569, 202 N.W.2d 249 (1972).

In the case of *Brown v. Palmer Construction Co.*, 295 A.2d 262 (1972), the Supreme Judicial Court of Maine granted compensation to linemen working beyond reasonable commuting distance from home, who found their own lodging quarters and who were injured when the gas stove at which they were cooking exploded. The court explained its decision as follows:

"We think the policy of the Maine Act is to protect the employee against risks which are not purely self-created but are created by and incidental to the employment. In the instant case the necessity of lodging and meals in Brattleboro was not merely the necessity of the injured employees—it was a necessity of the employer in furtherance of the work it had contracted to perform in Vermont. . . . What they did was within the contemplation of the terms and conditions of that employment." 295 A.2d at 266.

The Maine court would thus hold the activities of a traveling employee to be created by and incidental to the employment unless the risk is purely self-created.

In New York, the rule has long been that if an employee is directed to travel to and remain in a particular locality, he

" . . . is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment." *Davis v. Newsweek Magazine*, 305 N.Y. 20, 28, 110 N.E.2d 406, 409 (1953). (Emphasis in original.)

The justification for such a rule is explained as follows:

"An employee traveling at a distance from his home in the business of the employer is deemed within the area of employment if injured in his normal activities. . . . They are required, of course, to sleep and eat at home, as well as abroad, but they do so when abroad under the aegis of the employment. . . By imposing the requirement that the employee be distant from his home environment, the employer imposes necessarily some limitation on the normal after-working hours activities of the employee and this finds implicit recognition in some of the decided cases." *Schreiber v. Revlon Products Corp.*, 5 A.D.2d 207, 171 N.Y.S.2d 122, 123 (1958).

In short, the after-hours activities of *ordinary* workers are not compensable because the employer exercises no control over them nor do they in any sense further his business. The after-hours activities of *traveling* employees, by contrast, are restricted by reason of the fact that the employer has, for his own business purposes, forced the employee to live in a distant and oftentimes unfamiliar environment.

This mode of analysis has found favor with the United States Supreme Court in the case of *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1950). In that case, the Court granted compensation to a claimant whose husband had died in a swimming accident while working as a civilian employee of a governmental contractor on Guam. The relevant language of the Longshoremen's and Harbor Workers Compensation Act—identical to that in Idaho's Workmen's Compensation Act—was construed by Justice Frankfurter as follows:

"Workmen's compensation is not confined by common-law conceptions of scope of employment. [Citations omitted.] The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. [Citations omitted.] Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose. . . . This is not to say that there are not cases 'where

an employee, even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.' *Matter of Waters v. William J. Taylor, Co.*, 218 N.Y. [248] at page 252, 112 N.E. [727] at page 728." 340 U.S. at 506–507, 71 S.Ct. at 471–472.

The United States Supreme Court has never yet found a traveling employee's activities so far disconnected from the service of his employer as to warrant the denial of compensation. For a similarly liberal treatment of the traveling employee in other states, *see, Leonard Van Stelle, Inc. v. Industrial Accident Commission*, 59 Cal.2d 836, 31 Cal.Rptr. 467, 382 P.2d 587, 589 (1963); *Tatum-Reese Development Corp. v. Industrial Commission*, 30 Colo.App. 149, 490 P.2d 94 (1971); *Martin v. Georgia-Pacific Corporation*, 5 N.C.App. 37, 167 S.E.2d 790 (1969).

My study of these and other authorities convinces me that the "traveling employee rule" has emerged out of thoughtful consideration of many individual cases in many independent jurisdictions. Unlike the "going and coming rule," it has not proved so impossible to live with that it spawns dozens of "exceptions." On the contrary, courts are unanimous in adopting its broad framework. It is not an absolute 24-hour continuous employment rule and there will always be room for reasonable minds to disagree as to precisely where the line should be drawn between activities which are reasonably incidental to one's employment and deviations which are so purely personal as to be without any substantial causal connection to one's employment. But I am convinced of the Court's wisdom in adopting the rule for the Commission's future guidance in resolving the cluster of cases that fits this pattern in Idaho.

DONALDSON, J., concurs.