JOHNSON, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*April 30—June 2, 1936.*

20

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent there was a brief by *Sanborn, Blake & Aberg* of Madison, and oral argument by *Wm. J. P. Aberg.*

FAIRCHILD, J.   Shortly after respondent was injured he applied to the Industrial Commission for compensation, and the proceedings under this application were conducted without notice to the attorney general of the existence of the claim.   The commission awarded compensation on January 19, 1934.   On July 13, 1934, the commission set aside its former award as invalid on the theory that sufficient and proper notice of the claim had not been given the state. Thereafter, and upon due notice to all parties, the matter was re-examined.   Upon the hearing the commission found as matters of fact:

"That the day of the injury was the opening day of the grouse hunting season of 1933; that applicant, on said day, accompanied one of the state's regular conservation wardens into the woods where grouse might be expected to be found; that a concurrent cause for the trip was the enforcement of the game laws; that another cause was to hunt grouse for their own benefit; that to so hunt grouse was not forbidden by the department; that the two wardens mutually agreed to take shotguns on their trip for the latter purpose; that both participated in the hunting, though applicant had not yet fired at a grouse; that while so participating, the applicant was accidentally struck by shots from the other warden's gun while the latter was firing at a grouse; that the injury resulted therefrom."

The commission denied liability on the part of the state and ordered respondent's claim dismissed.

The questions at issue are: First, did the Industrial Commission have authority, on its own motion, to vacate its original order and award of January 19, 1934, more than twenty days after the order had been entered; and, second, is there credible evidence to sustain the conclusion of the commission that the injury arose out of a hunting venture, and not out of respondent's employment?

The trial court was of the opinion that the commission did have authority to set aside and vacate its first order;

because of failure of notice to the employer, the order was void *ab initio*. The undisputed evidence shows that respondent was injured on September 30, 1933. He was at that time in the services of the state, in the Conservation Department. The injury was reported. The Conservation Department recommended, and the Industrial Commission allowed, the claim. No hearing was scheduled. The award was entered entirely upon reports and correspondence without any notice to the attorney general. Under the statutes, enacted for the purpose of devising a scheme of administration which will insure caution and proper management and at the same time safeguard the interest of the state in cases of this character, there is sufficient ground for the conclusion reached by the learned trial judge. The state was certainly a party. The attorney general is the chief law officer of the state. In the statutes prescribing his duties the attorney general is not specifically committed to an appearance in all claims which may be paid out of the state treasury, but when the state is a party, any controversy concerning compensation, must be submitted to the commission in the manner provided in ch. 102, Stats. 1933. This chapter clearly describes the state, in circumstances such as these, as an employer, and it is provided in sec. 102.17 (1) (a), Stats. 1933, that either party "shall have the right to be present at any hearing, in person or by attorney." Sec. 102.23 (4), Stats. 1933, reads:

"Whenever an award is made against the state the attorney general may bring an action for review thereof. . . ."

And in sec. 102.64 (2), Stats. 1933, there is provision that in all proceedings upon claims for compensation against the state, "the attorney general may appear on behalf of the state." A fair interpretation of the language of the statutes supports the construction placed upon them by the trial judge, and we concur in his opinion that the failure to afford the

attorney general the opportunity to determine whether or not the claim should be contested, and to exercise the right given him by the statute providing that he "may appear on behalf of the state," resulted in an invalid order. The ruling that the order was void *ab initio* is sustained.

As to whether the respondent was injured while performing services growing out of and incidental to his employment, it appears that the accident occurred while respondent was employed as a game warden, and in the company of "one of the state's regular conservation wardens." He was in the woods for the enforcement of game laws. If the respondent's injuries resulted from a natural and usual incident of his work; that is, if it was not caused by his own act after assuming a status different from that of game warden, he is entitled to compensation as found by the court below. The findings of the commission do not exclude the idea of performance of duty on respondent's part at the time of the injury, and they do compel the conclusion that respondent was in the woods in the regular course of his employment. The fact that he was equipped to, and intended for his own benefit, to shoot grouse if an opportunity therefor presented itself, did not take him out of the field of his employment. It appears that in the hunting season it was customary for game wardens, in fact, they were expected by their superior officers, to appear in the woods in the guise of hunters to insure more efficient service on their part. Under the findings and the undisputed evidence, there was no departure from the scope of his employment. *Barragar v. Industrial Comm.* 205 Wis. 550, 238 N. W. 368. He was where his duties required him to be, and while there sustained the injuries complained of. Each of the men, the respondent and his companion, were in the woods for the purpose, primarily, of enforcing the game laws and to discover violators thereof. Respondent had not stepped aside for the purpose of shoot-

ing grouse for himself. His companion, for the time being, may have become a hunter, and while in a personal capacity, injured the game warden. However, at the time of injury, the game warden was pursuing his official calling. We are not confronted with a situation where respondent, by his mental attitude, transformed himself from a public official into a private individual engaged in hunting. Had he done anything for himself that did not pertain to his official work, it might then be determined that he had engaged in purposes foreign to his employment. The fact that the two wardens carried shotguns on their official trip does not, under the record here, show that the respondent was not on duty, and does not show that, at the time, he was engaged in a personal affair. The service of his employer was the cause of his being in the woods. His private and personal interests in securing game did not take him there. Under the tests suggested in the cases of *Barragar v. Industrial Comm.,* *supra,* and *Matter of Marks v. Gray,* 251 N. Y. 90, 167 N. E. 181, it clearly appears that respondent's ordinary duties as a game warden brought about the expedition, resulted in the exposure and the resulting injury.

*By the Court.*—Judgment affirmed, and cause remanded for further proceeding according to law.