74 So.2d 474

**Andrew J. FOSTER**

v.

**CONTINENTAL GIN COMPANY.**

**6 Div. 741.**

Supreme Court of Alabama.

Aug. 30, 1954.

Hogan & Calloway, Birmingham, for appellant.

White, Bradley, Arant, All & Rose, Birmingham, for appellee.

SIMPSON, Justice.

This is a review by certiorari of the findings and judgment of the circuit court of Jefferson County denying petitioner compensation under the State Workmen's Compensation Law for disabling injuries to his wrist and arm.

The question, as usual, is whether the injuries arose out of and in the course of his employment, thereby entitling him to an award. Code 1940, Title 26, § 270.

■ We merely repeat for emphasis the oft-stated rule of review in such cases, that if there is any reasonable view of the evidence that will support the conclusion below the judgment will not be disturbed. Ala.Dig., Workmen's Compensation, ⊕1940.

Guided by this rule, we are constrained to hold that the judgment is not subject to reversal. We quote the salient facts as found by the trial court:

"The evidence in this case tended to show that on March 23, 1953, the plaintiff, while working on a machine called a planer in defendant's plant, received a disabling injury to his wrist and arm. He had started to work before regular hours had begun at 7:30 a. m., and continued to work after the whistle blew at 7:30, and while the evidence was conflicting, he was probably hurt after 7:30 during his regular working hours. Plaintiff had been employed by defendant several years and had worked on this planer many times during his employment. Before and at the time he was hurt, he was working on a wooden stand for a lamp which consisted of pieces of wood glued together. This wooden stand was plaintiff's property, and he was making this stand for his own exclusive personal use in his home and for his own benefit. * * *

"The evidence shows that there was a practice in the shop of defendant where plaintiff worked for various employees to do and perform what they call 'government work' during the hours of their employment; that 'government work' is defined as work for the benefit of the workman, or for some individual as distinguished from the defendant. The evidence is conflicting as to the circumstances under which this 'government work' was performed. Certain witnesses testified that they had to get a number from the office before such work could be done, but the weight of the evidence is that such work for the workman's own benefit in making certain objects which he or some friend or acquaintance would use was a common practice in the plant, and that while it was, in effect, prohibited by the rules of the company, the foreman and others in authority in the shop knew that such work was being done and permitted it to continue. The plaintiff claims that the permission of such 'government work' extended the scope of plaintiff's employment, and that because of the implied permission of foremen in letting such work be done, that plaintiff comes under the provisions of the Workmen's Compensation law."

On the basis of the foregoing finding the court adjudged:

" * * * The Court * * * finds that the Plaintiff was injured while doing work on a lamp stand which was his personal property, and that such work was exclusively for his own ben-

efit, and that such injury did not arise out of and was not in the course of his employment as provided by the Workmen's Compensation Law, and was in no way incidental to such employment. * * * and the Court hereby renders a judgment for the defendant in this case, and the plaintiff excepts."

The terms "arise out of and in the course of employment" [249 Ala. 675, 32 So.2d 677.] of the workman have been defined in varying language in our cases. We will mention some which may be serviceable in determining the question instantly considered.

For an accident "to arise out of employment" the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment, not by some other agency. Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666, and cases cited.

In Vickers v. Alabama Power Co., 218 Ala. 107, 108, 117 So. 650, 651, it was stated:

"* * * if the work being done at the time of the accident may properly be regarded as within the *ordinary expectation or contemplation* of the parties, as being necessary or proper for the employee to do, to aid in carrying out, either directly or indirectly, the main purpose or business of the employer, even though the workman steps aside from his usual work to do it, the accident may be said to be one arising out of his employment. * * *"

A rather accurate statement as to the meaning of the term "arise out of" is found in Ex parte Terry, 211 Ala. 418, 419, 100 So. 768, 769, in the following language:

"* * * an employe's injury may be properly held to have arisen out of his employment notwithstanding that the act or conduct of the employe to which the injury is proximately referable was not within the scope of his authority nor strictly within the line of his duty, provided it was reasonably related to the service he was employed to render and was in good faith done or undertaken in furtherance of the employer's business; and notwithstanding, also, that the injury in question was not one of the anticipated risks of the service."

The definition of "in the course of employment" is succinctly stated in Southern Cotton Oil Co. v. Bruce, supra, as follows:

"* * * The phrase 'in the course of his employment' refers to the time, place, and circumstances under which the accident took place. An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it. Mobile Liners, Inc., v. McConnell, 220 Ala. 562, 126 So. 626." 249 Ala. 680, 32 So.2d 670.

Several cases considering and applying the term are discussed in that case. One worthy of mention, Johnson v. Industrial Commission, 222 Wis. 19, 267 N.W. 286, 287, 288, is pertinent here in considering the distinction between a case where an injury occurs while the employee is engaged in his employment and where he is injured outside of the course of his employment on a mission solely his own. There a game warden along with another officer of the State Conservation Department were engaged in their duties of policing the hunting fields but at the same time had taken their own guns to do some hunting, which was customary and expected by their superior officers. In the course of the day the other officer, in shooting at a grouse, accidently hit and injured the game warden (plaintiff). The court allowed compensation and correctly so, holding that the injury resulted from the natural and reasonable incidents of his work, he being at that time engaged, as one of his concurrent activities, in performing the duties of his work. But the court made the following

apposite observation: "Had he done anything for himself that did not pertain to his official work, it might then be determined that he had engaged in purposes foreign to his employment."

Other of our cases on the subject have equally as apt definitions of the two terms, but the foregoing, we think, will suffice to illustrate the clear conclusion that the trial court cannot be put in error in denying the plaintiff compensation. The activity of the plaintiff was of no benefit to the employer, not a part of the duties of his employment, and in no way incident thereto. On the other hand, as found by the trial court, he was "injured while doing work on a lamp stand which was his personal property * * * exclusively for his own benefit." The foregoing finding is supported by the evidence. It excludes the idea that any work was being done by him for the defendant either by direct or implied authority or that it was in any way necessary or proper in carrying out the purposes of his employment. Working on his own personal property exclusively for his own benefit could not, in our view, under any sort of rationale afford the conclusion that he was fulfilling the duties of his employment or engaged in something incident to it. Indeed, from the facts appearing, he had never entered upon the duties of his employment on the day of his unfortunate accident, but had begun this personal work for himself before work hours and continued without interruption until the accident occurred.

The Vickers case, supra, is of considerable factual similarity and authoritative in sustaining our conclusion. There the workman was constructing a tool box to hold his tools he was to use in his employment. The court observed:

"It cannot be fairly said that the construction of this tool box was for any other purpose than to suit the convenience or the fancy of the workman. It was not for the protection of his employer's property, but of his own; nor does it appear to have been reasonably necessary *even for that*. It cannot be fairly said that such an undertaking was an incident of his employment, or that it was in 'the ordinary expectation or contemplation of the parties.' Nor can it be fairly said that the workman was justified in believing that it was 'within the scope of his implied duties,' particularly in view of the employer's statement to the workman that he was not to have a locker until one should become vacant. Very emphatically, it could not have been contemplated or implied that the workman should resort to the use of a dangerous and unfamiliar piece of machinery for such a purpose. And, finally, we are unable to see that this undertaking, had it been completed, would have aided or furthered the employer's business in any way or to any extent. The tests all fail, and the least that can be said is that the conclusion of the circuit court is fairly supported by every reasonable inference from the ascertained facts." 218 Ala. 108–109, 117 So. 651.

True, in the Vickers case it did not appear that the workman had had permission to use the machinery, but the underlying theory of the opinion is equally apposite to the instant case, since the proximate cause of the injury was in no way traceable to his employment, but to work foreign to his employment. Nor did the work contribute in any way incidentally, even remotely, to the master's business.

It is argued here by able counsel with much cogency that the scope of the petitioner's employment had been extended to include the activity which produced his injury by the implied permission of those in authority, which allowed such work to be done. Following the liberal construction rule, the courts, some more so than others, have gone far in allowing awards where the workman temporarily deviated from his customary duties and was injured while performing an activity not within his usual duties when by common practice his superiors in authority had acquiesced in or permitted it. It would unduly burden this opinion and serve no useful purpose to notice and attempt to differentiate the many

cases on this question, since the facts are different in each case and the decision in each case must rest on its own particular facts. We wish to observe, however, that all of our cases and most of those of other jurisdictions which have been cited in briefs or have come to our attention in our own research, applying the extended scope of employment and temporary deviation from duty doctrine, are not at all factually similar to the instant case. In those cases the accident occurred while the worker was on duty engaged in his employment or something incident thereto and deviated from that employment under orders of his superior in authority or for the purpose of performing something necessary for the workman's own comfort or relaxation and permitted by his employer. Following are some examples: Where the injury occurred at the place of work in the woods when the workman at the lunch hour was injured while heating coffee for his lunch, Wells v. Morris, 33 Ala.App. 497, 35 So.2d 54; employee killed while on a trip for the benefit of the employer and in furtherance of the work, Hamilton Motor Co. v. Cooner, 254 Ala. 422, 47 So.2d 270; workman injured while doing private work under orders of his superior, Wilson & Co. v. Curry, 259 Ala. 685, 68 So.2d 548; workman killed by third party, with company pistol used by employee in performance of his duties, while on duty at his office, Southern Cotton Oil Co. v. Bruce, supra; employee injured while using employer's laundry for washing clothes used in employer's service, with permission of employer, Sylvia's case, 298 Mass. 27, 9 N.E.2d 412; employee injured while witnessing indoor baseball game during lunch hour on employer's premises under settled practice of employer permitting same for the entertainment and relaxation of the employees, Conklin v. Kansas City Public Service Co., 226 Mo.App. 309, 41 S.W.2d 608; employee injured in the men's room on employer's premises while lighting cigarette, cigarette smoking having been permissible in the room, Cowan v. Bunting Glider Co., 159 Pa.Super. 573, 49 A.2d 270.

The case of Penzara v. Maffia Bros., 282 App.Div. 790, 123 N.Y.S.2d 6, is more sustentive of petitioner's position than any other, where the claimant, as a "handyman" in an automobile repair shop, while being required to remain on the employer's premises during "slack intervals," was permitted to work on his own car and while doing so was injured, the court holding that since the claimant was required to remain upon the employer's premises during slack intervals and was permitted to use the employer's tools to work on his own car, there was justification for the holding of the lower court that he should be awarded compensation. Even there, however, without considering the soundness of the holding, that case and the one at bar are distinguishable, since the finding here is against the workman to the effect that the activity he was engaged in was in no way incident to the employer's work but exclusively for his own benefit, such finding being justified because from aught appearing the petitioner had never started working for his employer on the day of the injury and so far as is known was not required to stay on duty continuously during work hours.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.