Mary L. COLLINS, widow of Levy Collins, deceased, Appellant,

v.

CENTRAL FOUNDRY COMPANY, Appellee.

No. 17430.

United States Court of Appeals Fifth Circuit.

Feb. 13, 1959.

Walter B. Henley, Northport, Ala., James A. Turner, Tuscaloosa, Ala., for appellant.

Perry Hubbard, LeMaistre, Clement & Gewin, Tuscaloosa, Ala., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

This action was under the Alabama Workmen's Compensation Law.[1] The sole issue before the district court was whether Levy Collins, plaintiff's intestate, died as a result of an accident arising out of and in the course of his employment. The district court concluded:

"That the plaintiff has not sustained the burden of proof establish-

1. Alabama Code of 1940, Title 26, Sec. 253 et seq.

ing that the employee's death proximately resulted from an accident arising out of and in the course of his employment and is, therefore, not entitled to recover herein."

On July 26, 1956, the employee Levy Collins, a man about 49 years old, was loading shells, weighing approximately 75 pounds each, from the floor to a conveyor belt about waist high. The outside temperature was 97 degrees Fahrenheit. The estimates of the temperature inside the foundry varied from that of the outside temperature to 105 degrees Fahrenheit. The humidity was in the neighborhood of 50 per cent. Collins ate lunch between 12 noon and 12:30 P.M. Within an hour, between 1:15 and 1:30 P.M., he was seen to slump backwards. He had made no complaint of suffering or of being sick prior to his attack. He was promptly carried to a large outside door, and after a couple of gasps, he died.

From the fall there was a small abrasion on the back of his head, but the district court found that such a blow was not capable of proximately causing death.

Plaintiff's principal contentions were that Collins' death was proximately caused by heat stroke or by heat exhaustion. An autopsy was performed upon the body. The first physician to see the deceased following his death testified that in his opinion he did not die from heat stroke or from heat exhaustion.

His opinion was that the most likely cause of death was a "Stokes-Adams Syndrome," which he described as a simple standstill of the heart or cardiac arrest.[2] This physician could "see nothing to indicate that he died from excessively high environmental heat." There was testimony that Collins had previously had fainting or dizzy spells, and testimony to the contrary.

Two other physicians testified that the autopsy findings were compatible with or not inconsistent with heat stroke or heat exhaustion. On cross-examination, one of them conceded that the findings were also compatible with other causes of death. One of the physicians testified that "any work under any conditions could contribute to an Adams-Stokes (sic) syndrome, or Adams-Stokes (sic) attack."

■ To justify recovery under the Alabama Act, the particular employment must be the cause and source of the accident.[3]

■ The Alabama Workmen's Compensation Law provides a very simple civil action for the determination of controversies or disputes with respect to the right to compensation.[4] The only issue upon which a jury trial can be demanded is that of willful misconduct on the part of the employee. In the present case, no jury trial was demanded, and the hearing was before the court without a jury.[5] The only kind of review provided in the

---

2. "People's hearts will suddenly stop beating, and it may stop for thirty seconds or forty-five seconds or a minute, and sometimes even a couple of minutes.

"And during that time, depending on how long the heart is stopped, the patient may feel weak, he may feel dizzy, he may faint, he may fall out.

"And people can have a number of these attacks, and they can die in an attack. If they do they die very suddenly, because the heart stops and doesn't start again. That's all."

3. Alabama Pipe Co. v. Wofford, 1950, 253 Ala. 610, 46 So.2d 404, 406; Carraway Methodist Hospital v. Pitts, 1952, 256 Ala. 665, 57 So.2d 96, 101; Massey v. United States Steel Corporation, 1956, 264 Ala. 227, 86 So.2d 375, 380.

4. Alabama Code of 1940, Title 26, Sec. 297.

5. In Fortenberry v. Maryland Casualty Company, 5 Cir., 1957, 247 F.2d 702, 705, a Texas workmen's compensation case, we said:

"* * * The proceeding being statutory and unknown to the common law, the kind of jury trial to which the parties are entitled is not that preserved by the seventh amendment, but is controlled entirely by Texas state law. National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893; Erie R. Co. v. Tompkins, supra [1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]."

State courts is by certiorari.[6] Upon such review, "if there is any reasonable view of the evidence that will support the conclusion below the judgment will not be disturbed." Foster v. Continental Gin Co., 1954, 261 Ala. 366, 74 So.2d 474, 475. The conclusions must be based on legal evidence, "but, where there is any legal evidence to support the finding of the trial court, such finding is conclusive, and no technical questions as to the admissibility of evidence will be considered on appeal." Sloss-Sheffield Steel & Iron Co. v. House, 1928, 217 Ala. 422, 116 So. 167. See also, Houser v. Young, 1946, 247 Ala. 562, 25 So.2d 421, 422.

The Erie doctrine [7] has as its foundation the constitutional autonomy and independence of the States. Referring to the abstractions regarding "substance" and "procedure," the Court has declared: "A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties." Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079.

Further, the Court stated in that case:

" * * * In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result." Guaranty Trust Co. of N. Y. v. York, supra, 326 U.S. at page 109, 65 S.Ct. at page 1470.

With those principles in mind, we think that in such a purely statutory action the proceedings in the Federal courts, like those provided in the State courts, should be kept simple and subject to limited review only.[8]

We have nonetheless carefully read and studied the voluminous evidence and have considered the rulings attacked as if the Federal Rules of Civil Procedure controlled. The rulings on admissibility of evidence do not present questions of enough substance to require discussion, and, in any event, were harmless. Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. As to the sufficiency of the evidence, we could not set aside the findings as "clearly erroneous" under Rule 52(a), Federal Rules of Civil Procedure.[9] The judgment is

Affirmed.

6. Alabama Code of 1940, Title 26, Secs. 297, 304.

7. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188.

8. For an analogous scope of review under the Federal Longshoremen's Compensation Act, 33 U.S.C.A. § 903 et seq., see Warner Co. v. Norton, 3 Cir., 1943, 137 F.2d 57, 58.

9. In Sullivan, Long & Haggerty v. Washington, 5 Cir., 1942, 128 F.2d 466, 467, referring to the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq. we said:
   " * * * For whether, the action being purely statutory, the finding of the district judge is to be tested as under the rule governing the appeal it allows to the state appellate courts, or as under Rule 52, of the Federal Rules of Civil Procedure, it is perfectly clear that there can be no reversal here. Under both rules the appellate courts may reverse if the findings are manifestly erroneous, under both, they may not unless they are. Here there was a direct and positive conflict in the medical testimony taken orally and plaintiff's witness was in no manner impeached or discredited. This is the very kind of record where it is peculiarly the province of the trial judge to determine the facts."