This is a workmen's compensation case.
After considering evidence presented orally and by deposition the trial judge entered findings of fact and conclusions of law with judgment denying claimant compensation.
Claimant appeals contending error in the court's findings that the evidence was inconclusive and speculative that his disease was caused by his work. He further contends error in the failure of the court to find that the work precipitated or aggravated the onslaught of an existing condition. Claimant also submits that the trial court, by its statements in its findings and conclusions, clearly set too high a standard of evidence as to determining causation.
Our study of the record discloses a somewhat unusual situation for workmen's compensation cases. The evidence may be termed undisputed and briefly stated is as follows: Claimant was employed in August 1979 as a "roll straightener" by Brammall. The work required claimant to travel about the southeast as directed and "straighten" large rolls of paper and steel which had been altered in shipping. Most of such work was contracted by railroads and was performed either in unheated warehouses or outdoor storage facilities. The tools used were steel rods, hydraulic rams and heavy steel mallets or hammers. The mallets, weighing some thirty pounds, were all uninsulated steel, including the handle. The procedure was to drive a steel rod into the center or core of the roll by striking it with the mallet. The attached hydraulic ram was then used, together with further beating on the roll of paper or steel to return the core and the roll to its original shape. Such work required much physical labor. As many as twenty to seventy rolls per day were often repaired. The continual hammering of steel upon steel caused great vibration of the mallet, which vibration was *Page 1296 
transmitted through the uninsulated handle into the hands and arms of claimant.
In November of 1980, claimant began to notice whiteness and numbness in his fingers. The numbness and tingling began to carry over into the night, developing into aching and itching. His hands would become very cold and the use of the mallet became painful. He had never experienced these problems before. His employer was informed of the condition which rapidly became worse. In December claimant consulted a physician who was not familiar with the problem. He was referred to another physician. Upon consultation claimant was told he had "Raynaud's."
Claimant returned to work. In a few days the pain became extreme, his fingers became cracked and some of the fingernails became blackened and loosened. The physician tried various medicines and treatment and told him not to return to work. The condition worsened and another physician was brought into the case.
That physician hospitalized claimant for extensive tests to determine the cause of the problem. No etiological cause for the condition was found even though one of the fingers came near to becoming gangrenous. He was released from the hospital, continuing to suffer extreme pain, swollen and stiffened fingers, cracked and bleeding fingertips. Exposure to cold, even air conditioning, caused pain. He was unable to use his hands and wore gloves to protect them from contact and cold. The pain was often so intense that he slept in a chair with his hands wrapped in a heating pad.
Claimant was again referred by his first treating physician to another. Reviewing the records of tests previously made and performing his own examination, the new physician diagnosed his condition as "Raynaud's Disease." He prescribed different medicines, recommended removal to a warmer climate, directed claimant to avoid vibrations or concussions to his hands, exposure to cold and to wear gloves for protection.[1]
Claimant terminated his employment with Brammell in March 1981. He attempted to go to college but encountered such problem with the use of his hands in writing that he discontinued. His condition improved during the warmth of the summer of 1981. Following the advice of his physician, claimant moved to Florida and obtained employment. His condition now is greatly improved though he occasionally has difficulty which he has been able to control with medication.
The condition from which claimant suffers has been medically diagnosed by each of the three treating physicians as "Raynaud's Disease." It is interesting to learn about this disease. It appears that when symptoms first appear, the condition is medically termed "Raynaud's Phenomenon." That term describes a spasm of the blood vessels in the extremities of the body, generally of the fingers, but may involve the toes, tip of the nose, ears or any prominence more subject to cold exposure than other body parts. Such spasm may produce a white, then blue, then red color — the change in color correlating with different stages of the vascular spasm and its release. The term "phenomenon" relates to what is occurring before it is known what is causing it to occur. The "phenomenon" or "vasospasm" usually is a secondary reaction to some determinable primary etiological condition such as trauma or injury of an artery in the shoulder or neck, some connective tissue disease or inflammatory condition of arteries.
If there is not found some such primary cause, the phenomenon then becomes the primary problem and thus a disease. It is no longer a "phenomenon" resulting from a primary cause, but is a disease within itself without known cause. It thus becomes "Raynaud's Disease."
Two of the physicians stated that they could not say that claimant's disease was caused by the exposure to cold and constant vibrations experienced by him in his work even though their test disclosed no other cause. They said that without question the *Page 1297 
conditions of his work aggravated his disease and that he should cease such work and avoid exposure to such conditions.
The last physician expressed the opinion that the conditions of his employment were the cause of his vasospasms and thus the cause of his disease. Such opinion was supported by the absence of a finding of any other cause and the fact of his improvement after leaving his employment. That physician's opinion was also influenced by medical publications which reported similar effects in operators of jackhammers. There was introduced a report issued by the Center for Disease Control reporting a high incidence of Raynaud's Phenomenon (also called vibration-induced white fingers or VWF) among foundry workers exposed to vibration from use of air hammers, grinders and chippers.
With the above related evidence before him, the trial judge made the following "Conclusion of Law."
 "From the evidence the Court finds that plaintiff has suffered from a disease of unknown causation. The Court is not reasonably satisfied from the evidence that the disease suffered by the plaintiff was caused by any condition of his employment. The weight of the medical evidence is inconclusive as to the cause of the disease and the evidence suggesting that a condition of the plaintiff's employment may have been the cause of his disease is speculative and the Court is not reasonably satisfied that such evidence has any foundation in sound medical evidence. The Court is not reasonably satisfied from all the evidence that the disease suffered by the plaintiff arose out of his employment as required by Alabama Code § 25-5-51. The Court is aware that all doubts are to be resolved in favor of awarding compensation in Workmen's Compensation cases but finds insufficient evidence in this case to causally connect the disease with conditions of the employment.
 "There is also insufficient evidence to reasonably satisfy the Court that the disease suffered by the plaintiff is an occupational disease under Alabama law. The Court is not reasonably satisfied that the disease arose out of the employment of the plaintiff as required by the Occupational Disease statute, Alabama Code § 25-5-110. Further the Court is not reasonably satisfied that the disease suffered by the plaintiff is a result of exposure to hazards which are peculiar to his occupation as required by § 25-5-110.
 "The Court is not reasonably satisfied from the evidence that the plaintiff suffers any compensable permanent disability. There was no clear evidence on the issue of the plaintiff's loss of ability to earn and the Court concludes that there is no loss of ability to earn which is compensable under the Workmen's Compensation statute."
Recognizing, as we do in all workmen's compensation cases, that our review of the judgment of the trial court is expressly limited by statute, § 25-5-81 (d), Code 1975, we have considered the evidence and conclusions of law of the trial court. We have concluded that there is no reasonable view of that evidence that supports the conclusion of law expressed by the trial court that the disease of claimant did not result from conditions to which he was exposed in his work. Collins v.Central Foundry Co., 263 F.2d 712 (5th Cir. 1959); Glover v.Howell Plywood Co., 50 Ala. App. 22, 276 So.2d 608 (1973). Though the trial court did not specifically make a finding as to whether claimant's disease was activated or aggravated by his employment, we consider a negative conclusion of that issue to be inherent in the judgment denying the claim. Such a finding is directly contrary to the testimony of each of the physicians. Each of them stated without reservation that the vibration and exposure of the job aggravated the disease, and each of them directed him to cease his employment and to avoid similar employment in the future.[2] *Page 1298 
It is hardly material whether the disease was caused by the job or was pre-existing but activated or aggravated by the job. We held in the case of Newman Brothers, Inc. v. McDowell,354 So.2d 1138 (Ala.Civ.App.), cert. denied, 354 So.2d 1142 (Ala. 1978); that the fact that the workman had a pre-existing disease did not affect an award of compensation if the job combined with the disease to produce an injury or death.
Reiterating, it is the opinion of this court that the conclusions of law and the judgment of the court are contrary to and not supported by the evidence. We find the evidence as to cause of the disease to be undisputed, clear and not speculative. The two doctors who did not state an opinion as to cause, did not dispute the doctor who did give his opinion that the disease was caused by the job. Ford Life Insurance Co. v.Burton, 364 So.2d 327 (Ala.Civ.App.), cert. denied,364 So.2d 329 (Ala. 1978). If causation were not undisputed, we are convinced that claimant should recover because all of the medical witnesses agreed that the disease was aggravated and caused to become symptomatic by the job.
This court further finds the trial court to have erred in holding claimant suffered no compensable disability, either temporary or permanent. Again the testimony was undisputed that claimant was caused by the disease to leave his employment in March 1981. He was caused to move to Florida in order to live in a warmer climate. There was testimony both medical and from an employment expert witness that his employability was adversely affected to a considerable extent. There was testimony that at least fifty percent of those who contracted Raynaud's Disease would have recurrence and that continued care and avoidance of cold and vibration was necessary. It was also shown that loss of feeling and sensitivity in the fingers was possibly permanent. Of course, continued medical care is to be expected.
For all of these reasons, the judgment denying the claim is reversed. The trial court is directed to enter judgment in favor of claimant and to proceed as necessary to determine an award both as to temporary and permanent disability together with medical benefits, all as provided by law. Additional evidence may be taken as deemed necessary to carry out the beneficent purposes of the Workmen's Compensation Law.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.
[1] Pictures of the fingers during this period clearly indicate the very serious condition.
[2] We note here that all evidence before the court relating to cause and effect, except the testimony of claimant, was by deposition. Thus our view of it is the same as that of the trial judge.