PITTMAN, Judge.
Stericycle, Inc., appeals from a judgment determining that Sonja Patterson suffers from a 57% permanent partial disability and awarding her benefits, pursuant to the Alabama Workers’ Compensation Act, §' 25-5-1 et seq., Ala.Code 1975 (“the Act”). Stericycle argues that the trial court’s medical-causation and disability determinations are not supported by substantial evidence.

Factual and Procedural Background

Stericycle is engaged in the business of medical-waste management, collection, and removal. Patterson was employed as a route truck driver; her duties were to collect containers of medical waste from designated sites and transport them to a disposal site. On January 19, 2011, Patterson drove a Stericycle truck to Shelby Baptist Hospital in Alabaster; loaded three containers of medical waste, each weighing approximately 50 pounds, onto a hand truck; and was pushing the loaded hand truck up a ramp to the Stericycle truck when she felt a “pop” and experienced pain in her lower back. No one witnessed the accident. It is undisputed that Patterson returned to the Stericycle office and reported the accident to her supervisor the same day.
The following day, Patterson was examined by Dr. Michael Mueller at St. Vincent’s Occupational Health Center. Dr. Mueller diagnosed Patterson as suffering from a lumbar strain, prescribed pain medication, returned her to work under light-duty restrictions, and scheduled a followup visit for January 26, 2011. Stericycle accommodated Patterson’s restrictions and assigned her administrative duties. When Patterson reported to Dr. Mueller at the follow-up visit that she was still having pain, Dr. Mueller scheduled three physical-therapy sessions for her. At the first session, Steven Estrada, the physical therapist, reported that Patterson’s symptoms were inconsistent and “positive for symptom magnification.” Following the third session, Estrada reported that Patterson had “had no significant subjective or objective change since the first visit. Still appears to be positive for symptom magnification.” Patterson saw Dr. Mueller for another follow-up visit on February 10, 2011. Dr. Mueller’s office notes for that day state: “22 days post injury; maximum therapy and meds; positive pain behavior and symptom magnification.” Dr. Mueller indicated that Patterson could return to work without limitation on February 14, 2011.
At Patterson’s request, Stericycle provided her with an alternative treating physician, Dr. Michelle Turnley, a physiatrist. Dr. Turnley dictated the following office note following her examination of Patterson on March 1, 2011:
“She describes some intermittent, non-persistent right and left leg weakness in the non-radicular distribution [that] comes on both after prolonged sitting and prolonged standing.... She ... does move slow[ly] and possibly some symptom magnification.... She has significantly diminished lumbar range of motion but she self-limits.... She has a negative straight-leg raise. She does have severe pain with FABER’s [flexion, abduction, and external rotation] bilaterally. She gets teary-eyed.... [A lumbar-spine X-ray] reveals no fractures, no acute abnormalities and fairly good disc-space integrity.”
Dr. Turnley diagnosed Patterson as suffering from a slow-to-resolve lumbar strain and prescribed anti-inflammatory and muscle-relaxant medications. At a follow *1173 up visit on March 25, 2011, Patterson reported that the medications had not helped her. Dr. Turnley changed Patterson’s medication to a narcotic pain reliever and ordered a magnetic resonance image (“MRI”) of Patterson’s lumbar spine to check for underlying disk disease. Dr. Morgan Eiland performed the MRI on March 29, 2011. His report states:
“FINDINGS: At L2-3, the disc is intact. There are degenerative facet changes. There is no spinal or forami-nal stenosis. At L3-4, there is disc dessication with a broad-based disc bulge and a midline annular tear. Facet and ligamentum flavum hypertrophy are present. There is bilateral recess steno-sis but no significant foraminal stenosis. At L4-5, there is disc dessication with a broad-based disc bulge and a midline annular tear. Facet hypertrophy is present. This causes bilateral recess lateral recess stenosis without foraminal stenosis. At L5-S1, the disc is rudimentary. It is intact. There is no spinal or foraminal stenosis elsewhere. No thecal sac or nerve root compression is present elsewhere. Bone marrow signal is normal.
“IMPRESSION: Degenerative changes as described. These are most significant at L3-4 and L4-5 where there is lateral recess stenosis. There are annular tears at both levels.”
On April 4, 2011, Dr. Turnley placed Patterson at maximum medical improvement (“MMI”), released her to return to work with no restrictions, and concluded that Patterson had “[zero] percent physical impairment.”
Before Patterson could return to work as a truck driver, she had to be cleared by passing a Department of Transportation (“DOT”) physical examination. ‘ On April 7, 2011, she reported to Dr. Mueller for the examination. Patterson testified that when she showed Dr. Mueller how far she could bend forward, he informed her that he “could not sign off on” the examination; no examination was ever conducted.
Dr. Turnley referred Patterson to Dr. Martin Jones, an orthopedic spine surgeon, who saw Patterson on April 21, 2011. Noting that Patterson had “some disc bulging and an annular tear,” but that there was “no evidence of large disc herniation,” Dr. Jones recommended an epidural block and physical therapy and concluded that Patterson could return to work that day without limitations. On May 26, 2011, Patterson returned to Dr. Jones, complaining of back pain and pain and numbness in both legs. Dr. Jones recorded the following office note:
“[Patterson] says she is barely able to get around. She is using a cane today- She is not working at all. Her physical therapy suggested moderate atypical pain behavior.
“IMPRESSION AND PLAN: At this point she seems just about incapacitated and it is hard to understand why based on her x-rays and her MRI scan. But in any event, my recommendation is to get a CT/myelogram and an EMG/nerve conduction study of her legs to see if anything else shows up at that point and then go from there.”
Dr. Ruth Snow, who performed the CT/myelogram, reported that the test showed “mild degenerative disc and facet joint changes in the lumbar spine; lateral recesses are mildly narrowed at L3^4; there is mild left lateral recess narrowing at L4-5; [and] L5 is a transitional element, as is T12.” Dr. Gordon Kirschberg, who performed the EMG/nerve-conduetion study, stated: “This is a normal elee-trodiagnostic study without evidence of neuropathy, radiculopathy, or specific entrapment being seen. There was poor voluntary recruitment of all muscle *1174 groups [in] both legs, which is a functional or non-organic sign.”
Patterson returned to Dr. Jones on June 23, 2011. Dr. Jones’s office note for that day states:
“[Patterson] says she is no better. She is still bound to the cane. Her myelo-gram is unremarkable other than just mild degenerative changes. Her EMG/ nerve conduction study is normal.
“I do not have any explanation for her symptomatology and suspect that there are secondary issues. She is at MMI, zero impairment rating to the body as a whole, and can return to full duty.”
Stericycle paid for Patterson’s medical treatment but paid her no temporary-disability benefits. On April 12, 2011, Patterson filed a complaint seeking benefits for a permanent total disability.
Only two live witnesses testified at trial — Patterson and Eric Fields, the district transportation manager for Stericycle. Patterson, who was 44 years old at the time of trial, stated that she had never experienced, or been treated for, back pain before her workplace accident in January 2011. Aside from the deposition testimony of Dr. Martin Jones (who merely reiterated the findings and conclusions contained in the records pertaining to his treatment of Patterson), no physician or other healthcare provider testified. Patterson’s medical records were admitted by agreement of the parties. Counsel for the parties signed and submitted the following stipulations “to be used at the trial of this matter”:
“1. On January 19, 2011, there existed between the parties the relationship of an employer and employee.
“2. On said date, the parties were subject to the Workers’ Compensation Laws of Alabama.
“3. On said date, [Patterson] alleged to receive an injury to her back that arose out of and in the course of her employment with [Stericycle]. Proper notice of said alleged accident and injury were given.
[[Image here]]
“7. The only issue to be decided by the court in this matter is the nature and extent of permanent disability benefits, if any, owed to [Patterson].”
(Emphasis added.)
The trial court’s judgment, in a section entitled “Evidence Before the Court— Stipulations of Evidence by the Parties,” states, in pertinent part:
“The parties stipulate to the Court that at the time of the occurrence made the basis of [Patterson’s] claim, [Patterson] was an employee of [Stericycle] as the term ‘employee’ is defined at Ala. Code § 25-5-1(5) (1975). The parties stipulate that [Stericycle] is a covered employer as the term ‘employer’ is defined at Ala.Code § 25-5-1(4) (1975) and was not excluded by the provisions of Ala.Code § 25-5-50 (1975).
“The parties further stipulate that the date of the injury made the basis of [Patterson’s] claim was on January 19, 2011, and that the alleged injury was the result of an accident arising out of and in the course of [Patterson’s] employment with [Stericycle]. The parties stipulate that [Patterson] gave proper and timely notice of her claim to [Steri-cycle] as required by the provisions of Ala.Code § 25-5-78 (1975).”
(Emphasis added.) Stericycle did not file a postjudgment motion challenging the trial court’s statement that the parties had stipulated that Patterson’s alleged injury arose out of and in the course of her employment.

*1175
Standard of Review

Our review is governed by the Act, which states, in pertinent part: “In reviewing the standard of proof ... and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Ala.Code 1975, § 25-5-81(e)(1). See also Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996). “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81(e)(2). Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975).

Discussion

Medical Causation

Citing Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003), and Ex parte Price, 555 So.2d 1060 (Ala.1989), Stericycle contends that Patterson failed to present substantial evidence of medical causation. The judgment states, however, that the parties had stipulated that Patterson’s injury was “the result of an accident arising out of and in the course of [Patterson’s] employment with [Stericy-cle].” Therefore, Patterson did not have the burden of proving medical causation. See Werner Co. v. Davidson, 986 So.2d 455, 461-62 (Ala.Civ.App.2007).
“ ‘For an accident to “arise out of employment” the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment, not by some other agency. Foster v. Continental Gin Co., 261 Ala. 366, 74 So.2d 474 [ (1954) ]. And an injury to an employee “arises in [the] course of employment” within the compensation act when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incident to it. Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666 [ (1947) ].’ ”
Ex parte Trinity Indus., 680 So.2d at 265 n. 2 (emphasis added; quoting Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 183, 82 So.2d 204, 207 (1955)). See generally 1 Terry A. Moore, Alabama Workers’ Compensation § 10:2 at 314-15 (1998).
“ ‘A stipulation is a judicial admission, dispensing with proof, recognized and enforced by the courts as a substitute for legal proof.’ ” K.D. v. Jefferson Cnty. Dep’t of Human Res., 88 So.3d 893, 896 (Ala.Civ.App.2012) (quoting Spradley v. State, 414 So.2d 170, 172 (Ala.Crim.App.1982)). The trial court’s conclusion that the parties had stipulated that Patterson’s injury arose out of and in the course of her employment dispensed with the necessity of proving medical causation, as the parties implicitly recognized in their stipulation that “[t]he only issue to be decided by the court in this matter is the nature and extent of permanent disability benefits, if any, owed to [Patterson].” A stipulation is a “ ‘voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate [the] need for proof or to narrow [the] range of litigable issues.’ ” Evans v. Alabama Prof'l Health Consultants, Inc., 474 So.2d 86, 88 (Ala.1985) (quoting Black’s Law Dictionary 1269 (rev. 5th ed.1979), quoting in turn Arrington v. State, 233 So.2d 634, 636 (Fla.1970)). “Parties may agree to try their case upon a theory of their choosing *1176 and their agreements will be binding. Reese Funeral Home v. Kennedy Electric Co., 370 So.2d 1030 (Ala.Civ.App.1979); Rule 47, A[la]. R. A[pp]. P.” Cotton v. Terry, 495 So.2d 1077, 1080 (Ala.1986). “ ‘[O]ne who has stipulated to certain facts is foreclosed from repudiating them on appeal.’ ” K.D. v. Jefferson Cnty. Dep’t of Human Res., 88 So.3d at 897 (quoting Spradley, 414 So.2d at 172). See also Vann Express, Inc. v. Phillips, 539 So.2d 296, 298 (Ala.Civ.App.1988).
The dissent finds fault, on two grounds, with our determination that the parties’ stipulation subsumed the issue of medical causation. First, the dissent contends that this case is virtually identical to Wilson v. Berry Industries Co., 451 So.2d 339 (Ala.Civ.App.1984), a decision holding that the trial court was not precluded by the language of the parties’ stipulation from determining (a) that the stipulation had not obviated the need to establish causation and (b) that the employee had failed to prove causation. Second, the dissent contends that the trial court’s judgment, when read as a whole, indicates that the trial court did not interpret the parties’ stipulation to subsume the issue of medical causation because, the dissent says, the trial court made its own finding of fact with respect to medical causation. We will address those contentions in turn.
Berry, supra, is similar to the present case in that the parties stipulated, without specifically mentioning the issue of causation, that “ ‘the only issue to be tried to the Court is the issue ... of permanent disability^] be it partial or total.’ ” 451 So.2d at 340. In Berry, the trial court explicitly determined that the employee had not established causation and denied benefits, thereby implicitly determining that the parties’ stipulation had not encompassed the issue of causation. This court affirmed the judgment, stating the following:
“The terms of the stipulation in this particular case did not require that the trial court award compensation to the employee. There was no admission of liability. In view of the language of the stipulation, the trial court could hold as it did and still be consistent with the stipulation.”
451 So.2d at 341 (emphasis added). Berry does not support the conclusion that the issue of medical causation remained extant in the present case; it supports the opposite conclusion. That is so because, in contrast to the judgment in Berry, the trial court’s judgment in the present case specifically states that the parties had stipulated that Patterson’s injury “was the result of an accident arising out of and in the course of [Patterson’s] employment with [Stericycle],” thereby indicating that the trial court interpreted the parties’ stipulation that the “only issue to be decided by the court in this matter is the nature and extent of permanent disability benefits, if any, owed to [Patterson]” to mean that the issue of medical causation had been resolved by the parties and need not be decided by the court. Berry indicates that, if the judgment is consistent with the trial court’s interpretation of the parties’ stipulation, then the trial court’s interpretation is to be upheld. In the present case, the judgment is consistent with the trial court’s interpretation.
With respect to the dissent’s second contention — that the judgment, when read as a whole, indicates that the trial court did not interpret the parties’ stipulation to encompass the issue of medical causation because the trial court made its own finding of fact with respect to medical causation — we acknowledge that, under the anomalous heading “Findings of Law” in its judgment, the trial court made the following reference to causation:
*1177 “The MRI and myelogram conducted by the authorized treating physicians noted that [Patterson] has an annular bulge in her discs located at the L3^4 and L4-5 levels of the lumbar spine. The MRI specifically showed a broad based disc bulge and midline annular tear at both the LB-4 and L4-5 levels of the lumbar spine.
“The court finds these results to be substantial evidence of the type and nature of an injury that was caused by the type of accident described in this case. The medical records indicate that these physical findings are consistent with the history contained in the records of [Patterson’s] having suffered an on-the-job injury.”
(Emphasis added.) The dissent maintains that the emphasized statement constitutes a finding of fact that Patterson’s January 19, 2011, work exertion caused two bulging disks and two annular tears in her lumbar spine. We think the meaning of the emphasized statement is far less certain. It appears to us that the trial court’s oblique reference to causation constituted, at most, a superfluous observation that the “type” of lumbar-spine abnormalities shown on Patterson’s MRI could be attributed to the “type” of work exertion that Patterson described as having occurred on January 19, 2011. That observation hardly constitutes a straightforward, conclusive finding that Patterson’s work exertion on January 19, 2011, actually caused two bulging disks and two annular tears in her lumbar spine. See 2 Moore, Alabama Workers’ Compensation § 24:52 at 591 (stating that a trial court’s judgment “should include a conclusive finding of every fact responsive to the issues presented to and litigated by the trial court....” (emphasis added; footnote omitted)).
Further, the trial court’s lengthy recitation of the evidence in this case, including evidence of Patterson’s medical treatment, diagnoses, and continuing pain following her work exertion on January 19, 2011, did not necessarily signal the trial court’s understanding that it was required to make a determination as to medical causation, as the dissent contends. The same evidence was also relevant to the trial court’s ultimate disability determination.
Finally, the dissent maintains that the conduct of the parties indicates that they did not intend their stipulation to resolve the issue of medical causation. If that is true, then it is surprising, to say the least, that neither party called an expert witness to testify at trial and that the sole expert who testified by deposition was not asked a single question touching on medical causation. Moreover, the facts that Stericycle (a) argued in its posttrial brief that Patterson had not established medical causation and (b) neglected to challenge the trial court’s statement that the parties had stipulated that Patterson’s alleged injury “arose out of and in the course of [her] employment” apparently reflect Stericycle’s failure to appreciate the legal import of the phrase “arising out of and in the course of ... employment.” That phrase has had a well-established meaning in Alabama jurisprudence for almost a century, see Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 224-25, 96 So. 188, 190 (1923), and counsel should be presumed to know its legal significance or to bear the consequences of their oversight, not to be rewarded for failing to raise the issue.
We conclude that the trial court was authorized to interpret the parties’ stipulation — that “[t]he only issue to be decided by the court in this matter is the nature and extent of permanent disability benefits,, if any, owed to [Patterson]” — to mean that it was unnecessary to determine the issue of medical causation. That the trial court, in fact, construed the stipula *1178 tion to obviate the need to decide medical causation is apparent from the trial court’s statement that the parties stipulated that Patterson’s injury was “the result of an accident arising out of and in the course of [her] employment with [Stericycle]” and from the absence of any conclusive finding of fact with respect to medical causation in the trial court’s judgment.

Disability

With respect to disability, the trial court determined:
“The medical records ... indicate that the various health care providers suspect that [Patterson], upon clinical examination, demonstrated a certain degree of symptom magnification. That is, the outward manifestations of pain displayed by [Patterson] were more, in the health care providers’ opinion, than one would expect given the objective findings and impressions resulting from the MRI, myelogram, and nerve conduction tests conducted regarding [Patterson’s] lower back injury.
“The court in Jim Walter Resources, Inc. v. Budnick, 619 So.2d 926 (Ala.Civ.App.1993), has written the following with regard to the court’s consideration [of a] plaintiffs subjective complaints of physical pain and its consideration of medical opinions:
“ ‘An injured employee’s own subjective complaints of pain are legal evidence which may support a finding of disability. See, e.g., Bankhead Forest Industries, [Inc. v. Lovett, 423 So.2d 899 (Ala.Civ.App.1982) ]; Hester v. Ridings, 388 So.2d 1218 (Ala.Civ.App.1980).’
[[Image here]]
“While the court notes that [Patterson’s] health care providers were perplexed by the degree of subjective pain complaints manifested by [Patterson], none of the said health care providers testified that [Patterson] should not have experienced any pain as a result of her accident.
“The court notes that in the medical record cited herein from Dr. Michelle Turnley ... [Patterson] indicated that she was experiencing ‘severe pain’ and got ‘teary eyed’ as she attempted to perform Flexion, Abduction, and External Rotation exercises. The court also takes into account [Patterson’s] presentation in court while testifying. [Patterson] walked with a decided limp as she ambulated from counsel table to the witness stand. She climbed the step to the witness stand with great care and sat slowly. [Patterson] ambulated as though she was much older than her 44 years. The court, therefore, finds that [Patterson’s] subjective manifestations of pain are credible and are a factor in determining the degree of permanent disability suffered in this case by [Patterson].
“The court in Carquest Auto Parts & Tools of Montgomery, Alabama, Inc. v. Waite, 892 So.2d 422 (Ala.Civ.App.2004), discussed other factors which the Court may consider in rendering its decree as follows:
“ ‘ “It is well settled that the trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, the trial court must consider all the evidence, including its own observations, and it must interpret the evidence to its own best judgment. Specifically, a trial court is not bound to accept a physician’s assigned impairment rating and is free to make its own determination as to an employee’s impairment.” Compass Bank *1179 v. Glidewell, 685 So.2d 739, 741 (Ala.Civ.App.1996) (citation omitted).
[[Image here]]
“In the case before the Court, [Patterson] is a person of limited work experience. She has worked as a cashier and as a truck driver. Both jobs require either standing or sitting for long periods of time which, [Patterson] testified, causes her back pain to increase. However, the Court also notes that [Patterson] did not testify that she was unable to work, only that she was not physically able to pass her DOT requirements in order to resume her occupation as a truck driver.
“[Patterson] continues to perform her household chores. [Patterson] cooks, and she tends to a young grandchild. [Patterson], though she does not have her [commercial driver’s license], continues and is able to drive her car and has some training as a cosmetologist.
“Applying th[e] standard [for permanent total disability], the court does not find [Patterson] to be permanently totally disabled. Rather, the court hereby finds [Patterson] to suffer an unscheduled permanent partial impairment as defined at Ala.Code § 25-5-57(a)(3)(g).
“The court also finds that [Patterson’s] percentage of vocational disability is hereby determined to be 57% and is payable in arrears from the date of the determination of maximum medical improvement as determined by Dr. Martin Jones on June 23, 2011.”
Citing Southern Energy Homes, supra, Stericycle argues that the trial court’s disability determination is not supported by substantial evidence. Stericycle maintains that, in determining whether Patterson was permanently disabled, the trial court focused solely on Patterson’s testimony and her outward manifestations of pain during the trial, thereby discounting without explanation, it says, evidence that every physician who had treated Patterson had reported that her complaints of pain were inconsistent with the objective medical findings, had assigned her an impairment rating of “zero,” and had noted that she had displayed either “positive pain behavior,” self-limiting effort, or “symptom magnification.”
In Southern Energy Homes, the employee claimed to have hurt her back in April 1996 when she fell off a ladder; she also claimed to have reported the accident to her supervisor. Five days later, however, when she asked to see a doctor, she was told by the employer that it was not aware that she had been injured on the job. The employee’s medical records contained no mention of the alleged ladder accident or resulting back pain until more than eight months later, after the employee had filed a workers’ compensation claim and had left her employment.
An orthopedic surgeon subsequently diagnosed the employee with degenerative disk disease. He noted that, although it was possible that the employee’s back pain could have resulted from the ladder accident, the employee’s complaints of pain were inconsistent with the physical findings in an MRI that revealed degenerative changes. The employee’s physical therapist also noted symptoms inconsistent with physical findings. A neurologist stated that the employee’s nerve-conduction study was normal, concluded that the employee had engaged in symptom magnification, and assigned the employee no permanent-impairment rating.
The trial court awarded the employee permanent-total-disability benefits, and this court affirmed. Our supreme court granted the employer’s petition for certio-rari review and reversed, holding, among other things, that there was “a lack of evidence indicating that [the employee] *1180 sustained a permanent total disability.” 873 So.2d at 1123. The court stated:
“‘Permanent total disability is the inability to perform one’s trade and the inability to find other gainful employment.’ Jim Walter Res., Inc. v. Budnick, 619 So.2d 926, 927 (Ala.Civ.App.1993) (citing § 25-5-57(a)(4)d., Ala.Code 1975). None of [the employee’s] doctors placed restrictions on her work status after- May 1998. Three of the physicians as well as the physical therapist who treated [the employee] stated that [her] symptoms and complaints were not consistent with the medical testing and her behavior at various times. Most importantly, none of the doctors, psychologists, or experts stated after examining [the employee] that [she] was incapable of gainful employment.”

Id.

Although there are similarities between Southern Energy Homes and the present case, Southern Energy Homes is distinguishable from the present case because, in this case, the trial court believed Patterson’s testimony that she had experienced unrelenting pain since January 19, 2011, expressly determining that Patterson’s “subjective manifestations of pain [were] credible.” The trial court was not required to explain why it found the physicians’ impairment ratings or symptom-magnification determinations unpersuasive. See Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 793-94 (Ala.Civ.App.2002).
“ ‘When evidence is presented ore ten-us, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably supported by the evidence and the correct legal conclusions have been drawn therefrom. Ex parte Trinity Indus.[, Inc.], 680 So.2d [262] at 268-69 [ (Ala.1996) ]; Fryfogle v. Springhill Mem’l Hosp., Inc., 742 So.2d 1255 (Ala.Civ.App.1998), aff'd, 742 So.2d 1258 (Ala.1999). The “appellate court must view the facts in the light most favorable to the findings of the trial court.” Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003).’ ”
Ex parte Caldwell, 104 So.3d 901, 904 (Ala.2012) (quoting Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011)). Based on that standard of review, we cannot reweigh the evidence if the trial court’s findings are supported by sufficient evidence.
In Compass Bank v. Glidewell, 685 So.2d 739 (Ala.Civ.App.1996), this court stated:
“It is well settled that the trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, the trial court must consider all. the evidence, including its own observations, and it must interpret the evidence to its own best judgment. Specifically, a trial court is not bound to accept a physician’s assigned impairment rating and is free to make its own determination as to an employee’s impairment.”
685 So.2d at 741 (citations omitted). “A trial court is free to consider the totality of the evidence, including the employee’s subjective complaints of pain, in making its disability determination.” G.A. West & Co. v. Johnston, 92 So.3d 74, 87 (Ala.Civ.App.2012) (citing Caseco, LLC v. Ding *1181 man, 65 So.3d 909, 925 (Ala.Civ.App.2010)).
The factors that the trial court considered and recited in its judgment in determining the extent of Patterson’s disability-are supported by substantial evidence. We conclude that the trial court did not err in determining that Patterson has suffered a 57% permanent partial disability.
The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
THOMAS, J., concurs.
THOMPSON, P.J., and DONALDSON, J., concur in the result, without writings.
MOORE, J., dissents, with writing.